**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.,*[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**DEBTORS' MOTION FOR AN ORDER APPROVING**
**SETTLEMENT WITH THE UNITED STATES**

Hanson Permanente Cement, Inc. ("HPCI") and Kaiser Gypsum Company, Inc.

("Kaiser Gypsum"), debtors in the above-captioned cases (together, the "Debtors"), hereby move

the Court for entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), approving a settlement (the "Settlement") between the

United States, on behalf of the United States Environmental Protection Agency ("EPA"), the

United States Department of the Interior ("DOI") and the National Oceanic and Atmospheric

Administration, on behalf of the Department of Commerce ("NOAA") (collectively, the "Settling

Federal Agencies"), Lehigh Hanson, Inc. ("Lehigh Hanson") and the Debtors regarding certain

environmental conditions at or related to that certain five mile stretch of the Lower Duwamish

River located in Seattle, Washington and designated by the EPA as the Lower Duwamish

Waterway Superfund Site (the "Site"). In support of this motion, the Debtors submit the

Declaration of Charles E. McChesney II, attached hereto as Exhibit A, and respectfully represent

as follows:

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement,
Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

## Background

1.      On September 30, 2016, each of the Debtors commenced a reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

2.      On October 14, 2016, the Court entered an order appointing an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases [D.I. 84].  On October 19, 2016, the Court entered orders appointing (a) an official committee of asbestos personal injury claimants (the "Asbestos Committee") [D.I. 100] and (b) a legal representative for future asbestos personal injury claimants (the "Future Claimants' Representative") [D.I. 99].

3.      Debtor HPCI is a wholly-owned, indirect subsidiary of non-debtor Lehigh Hanson.  HPCI is the direct parent of Debtor Kaiser Gypsum and certain additional domestic non-debtor subsidiaries.  The ultimate parent of the Debtors and Lehigh Hanson is non-debtor HeidelbergCement AG, a German company.

## The Debtors' History at the Site

4.      Each Debtor owned and operated facilities in the Seattle area at various times between 1927 and 1987.  For 29 months between 1947 and 1949, a predecessor of HPCI (referred to collectively with HPCI as "HPCI") leased and operated a cement manufacturing plant located at 3801 East Marginal Way, Seattle, Washington.  From 1944 to 1987, HPCI owned and operated a bulk cement receiving, storage and distribution facility at 5975 East

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

NAI-1506609906v7

Marginal Way, Seattle, Washington, and from 1965 to 1987, HPCI leased and then owned

property at 5906 West Marginal Way SW, Seattle, Washington, where HPCI operated a second

bulk cement receiving, storage and distribution facility.  All of these facilities were on or

adjacent to the Site.

5.      In 1927 and 1928, Kaiser Gypsum procured the land for and constructed

the cement manufacturing facility at 3801 East Marginal Way, which Kaiser Gypsum then

operated for 31 months before leasing the facility to other operators until the facility was sold by

Kaiser Gypsum in 1949.  In 1952 and 1953, Kaiser Gypsum procured the land for and

constructed a gypsum products manufacturing facility at 5931 East Marginal Way, Seattle,

Washington, which Kaiser Gypsum owned and operated from 1954 until the facility was sold in

1978.  From 1969 to 1976, Kaiser Gypsum leased the land and operated a gypsum accessories

manufacturing facility at 6335 First Avenue South, Seattle, Washington.  All of these facilities

were on or adjacent to the Site.

6.      By 1978, Kaiser Gypsum had sold all its operations in the Seattle area and,

by 1987, HPCI had ceased operations or sold all its facilities in the Seattle area.

7.      The Site involves more than 100 potentially responsible parties ("PRPs"),

including The Port of Seattle, The Boeing Company, the City of Seattle, King County,

Washington and the Debtors.  In February 2010, the EPA served each of the Debtors with a

request for information pursuant to Section 104(e) of the Comprehensive Environmental

Response, Compensation, and Liability Act, 42 U.S.C. § 9604(e) ("CERCLA"), and each of the

Debtors responded to that request with an initial response in June 2010 and a supplemental

response the following year, in December 2011.

8.      The Port of Seattle, The Boeing Company, the City of Seattle and King

County, Washington (collectively, the "LDW Claimants") have completed a remedial

investigation and feasibility study ("RI/FS") of the Site pursuant to the requirements of a joint

Administrative Order on Consent to Conduct a RI/FS between the LDW Claimants and the EPA.

The LDW Claimants also engaged in cleanup of various "early action areas" identified by such

LDW Claimants as locations that would require cleanup under any remedial scenario.  In 2013,

the LDW Claimants also agreed to perform additional studies of the Site, which remain ongoing.

### Efforts to Resolve the Liabilities at the Site

9.    In April 2014, HPCI, for itself and for Kaiser Gypsum, entered into an

Alternative Dispute Resolution Memorandum of Agreement (the "MOA") with over thirty

participating parties, pursuant to which the MOA signatories agreed to a process for allocating

the response costs incurred in connection with investigation and remediation of the Site.  In

November 2014, the EPA released a Record of Decision ("ROD") that prescribes a cleanup plan

for the Site that the EPA estimates will result in remediation costs of $342 million.  The EPA is

presently working with the LDW Claimants to complete certain additional investigations in

advance of implementing the remediation called for in the ROD.  In addition to the EPA, the

Washington Department of Ecology is also active with respect to the Site.

### The United States' Proofs of Claim

10.    Each of the Settling Federal Agencies and the LDW Claimants filed a

proof of claim against both Kaiser Gypsum and HPCI with respect to liabilities at the Site.  See

the United States' proofs of claim (Proofs of Claim Nos. 6, 7, 8, 9, 10 and 11); The Boeing

Company's proofs of claim (Proofs of Claim Nos. 68, 281, 447 and 645); the Port of Seattle's

proofs of claim (Proofs of Claim Nos. 23 and 24); the City of Seattle's proofs of claim (Proofs of

Claim Nos. 28 and 33); King County, Washington's proofs of claim (Proofs of Claim Nos. 71

and 88).  In particular, on March 31, 2107, the United States, on behalf of the EPA, the DOI and

the Department of Commerce acting through the National Oceanic and Atmospheric
Administration, submitted three proofs of claim against each of the Debtors (collectively, the
"U.S. Proofs of Claim").  Each proof of claim includes the same addendum, which alleges claims
in an unliquidated amount for a portion of $5,690,299.30 in unreimbursed response costs
incurred by the EPA, a portion of future response costs to be incurred under CERCLA in
implementing the ROD remedy and an unliquidated amount of natural resource damages,
including a portion of past and future assessment costs authorized by CERCLA, in an amount no
less than $783,918.19.

   11. On October 12, 2017, Ash Grove Cement Co. ("Ash Grove"), another PRP
at the Site, filed additional proofs of claim on behalf of the United States asserting claims in
undetermined amounts for past and future investigation, removal, remedial action and response
costs related to a cement manufacturing plant owned and operated by Ash Grove at 3801 East
Marginal Way in Seattle, Washington located at the northern terminus of the Site.  See Proofs of
Claim Nos. 648, 649, 650, 651, 652 and 653 (collectively, the "Ash Grove 501(b) Proofs of
Claims").[3]

   12. On November 1, 2018, the Debtors filed omnibus objections to the proofs
of claim filed by The Boeing Company [D.I. 1277], the Port of Seattle [D.I. 1278], the City of
Seattle [D.I. 1279] and King County, Washington [D.I. 1280].  The Debtors and each of the
LDW Claimants worked in good faith to consensually resolve their claims, and their efforts
resulted in settlement agreements with each of the LDW Claimants resolving all of those parties'
claims against the Debtors related to the Site.  In connection therewith, the Debtors filed motions

---

[3]  Ash Grove also filed claims on behalf of itself.  See Proofs of Claim Nos. 29 and 49.  These proofs of claim
are not addressed by the Settlement and will be addressed separately.

NAI-1506609906v7

seeking approval of those settlements [D.I. 1564, 1568, 1569 and 1570], and the Court, following

a hearing on April 11, 2019, approved each of the settlements [D.I. 1601, 1602, 1603 and 1604].

13.     Pursuant to Section 1.c. of the Debtors' settlement agreements with the

Port of Seattle, the City of Seattle and King County, Washington, the agreed upon claims shall

not be allowed until, among other conditions, the entry of a settlement agreement between the

Debtors and the United States concerning the Debtors' liabilities at the Site.  Pursuant to

section 2 of the Debtor's settlement agreement with The Boeing Company, the settlement

agreement shall not be effective until, among other conditions, approval of a settlement

agreement between the Debtors and the United States concerning the Debtors' liabilities at the

Site.

## **Proposed Settlement**

14.     Following extensive arm's-length negotiations, the Debtors, Lehigh

Hanson and the United States (collectively, the "Parties") have agreed to a settlement that

resolves the U.S. Proofs of Claim and the Ash Grove 501(b) Proofs of Claim.  The Settlement is

memorialized in a formal settlement agreement (the "Settlement Agreement"), which is in

substantially final form and attached hereto as Exhibit B.  The primary elements of the

Settlement are set forth below:[4]

a.     The United States shall receive no distributions or payments from
the Debtors in the Bankruptcy Cases with respect to the liabilities and obligations
of the Debtors asserted in the U.S. Proofs of Claim and the Ash Grove 501(b)
Proofs of Claim with respect to the LDW Site other than in respect of the proofs
of claim set forth in Paragraphs 4(a)-(g) (of the Settlement Agreement) (the
"Allowed Proofs of Claim").  The amounts allocated to each Allowed Proof of
Claim specified below are solely for Debtors' purposes in this Bankruptcy
proceeding, and do not reflect any allocation determined by the EPA, DOI and/or

---

[4]     All capitalized terms in this paragraph shall have the meanings ascribed to them in the Settlement
Agreement.

NAI-1506609906v7

NOAA.  The EPA, DOI, and NOAA shall be entitled to use, distribute, assign, and spend any funds received from Debtors as they determine is appropriate at the LDW Site or the Lower Duwamish River consistent with CERCLA. Furthermore, nothing herein shall in anyway resolve any liability of Ash Grove Cement Company to the United States associated with its ownership or operation of the parcel described in Paragraph 1.f. 7 (of the Settlement Agreement).

      i.      <u>Proof of Claim No. 10</u>. The United States on behalf of EPA shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 10 in the amount of $1,300,000.00 against Debtor Kaiser Gypsum in its bankruptcy case;

      ii.      <u>Proof of Claim No. 11</u>. The United States on behalf of EPA shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 11 in the amount of $1,300,000.00 against Debtor HPCI in its bankruptcy case;

      iii.      <u>Proof of Claim No. 9</u>. The United States on behalf of NOAA shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 9 in the amount of $200,000.00 against Debtor Kaiser Gypsum in its bankruptcy case;

      iv.      <u>Proof of Claim No. 6</u>. The United States on behalf of NOAA shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 6 in the amount of $200,000.00 against Debtor HPCI in its bankruptcy case;

      v.      <u>Proof of Claim No. 7</u>. The United States on behalf of DOI shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 7 in the amount of $200,000.00 against Debtor Kaiser Gypsum in its bankruptcy case; and

      vi.      <u>Proof of Claim No. 8</u>. The United States on behalf of DOI shall have an Allowed General Unsecured Claim with respect to Proof of Claim No. 8 in the amount of $200,000.00 against Debtor HPCI in its bankruptcy case.

      vii.      The Ash Grove 501(b) Proofs of Claim.  The Ash Grove 501(b) Proofs of Claim shall be Allowed General Unsecured Claims in the following amounts against the following Debtors:

      A.      <u>Proof of Claim No. 648</u>. The United States on behalf of EPA shall have an Allowed General Unsecured Claim in the amount of $325,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

      B.      <u>Proof of Claim No. 653</u>. The United States on behalf of EPA shall have an Allowed General Unsecured Claim in

the amount of $325,000.00 against Debtor HPCI in its bankruptcy case.

      C.    <u>Proof of Claim No. 651</u>. The United States on behalf of NOAA shall have an Allowed General Unsecured Claim in the amount of $50,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

      D.    <u>Proof of Claim No. 650</u>. The United States on behalf of NOAA shall have an Allowed General Unsecured Claim in the amount of $50,000.00 against Debtor HPCI in its bankruptcy case.

      E.    <u>Proof of Claim No. 649</u>. The United States on behalf of DOI shall have an Allowed General Unsecured Claim in the amount of $50,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

      F.    <u>Proof of Claim No. 652</u>. The United States on behalf of DOI shall have an Allowed General Unsecured Claim in the amount of $50,000.00 against Debtor HPCI in its bankruptcy case.

    b.    All Allowed General Unsecured Claims authorized by the Settlement Agreement, (i) shall receive the same treatment under the Plan of Reorganization, without discrimination, as all other Allowed General Unsecured Claims, with all attendant rights provided by the Bankruptcy Code and other applicable law, and (ii) shall not be entitled to any priority in distribution over other Allowed General Unsecured Claims. In no event shall the General Unsecured Claims allowed pursuant to this Settlement Agreement be subordinated to any other Allowed General Unsecured Claims pursuant to any provision of the Bankruptcy Code or other applicable law that authorizes or provides for subordination of allowed Claims, including, without limitation, Sections 105, 510, and 726(a)(4) of the Bankruptcy Code.

    c.    The treatment of Claims as Allowed General Unsecured Claims under this Settlement Agreement is without prejudice to any right of the United States to set off, against the debts underlying such Claims, any debts owed to a particular Debtor or Debtors.

    d.    Except as specifically provided in Paragraphs 15-17 (of the Settlement Agreement), effective on the Effective Date:

      i.    The United States and EPA covenant not to file a civil action or take administrative action against the Debtors and Lehigh Hanson pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607 for response costs at the LDW Site, with respect to releases of hazardous substances, pollutants, or contaminants from the Former Debtor

–Owned/Operated Parcels.

ii.      The United States and DOI covenant not to file a civil
action or take administrative action against the Debtors and Lehigh
Hanson pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, Section
311 of the Clean Water Act, 33 U.S.C. § 1321, and Section 1002(a) of the
Oil Pollution Act, 33 U.S.C. § 2702(a) for natural resource damages at the
Lower Duwamish River, with respect to releases of hazardous substances
from the Former Debtor –Owned/Operated Parcels.

iii.      The United States and NOAA covenant not to file a civil
action or take administrative action against the Debtors and Lehigh
Hanson pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, Section
311 of the Clean Water Act, 33 U.S.C. § 1321, and Section 1002(a) of the
Oil Pollution Act, 33 U.S.C. § 2702(a) for natural resource damages at the
Lower Duwamish River, with respect to releases of hazardous substances
from the Former Debtor –Owned/Operated Parcels.

iv.      Such covenants shall also apply to the Debtors' and Lehigh
Hanson's successors and assigns, officers, directors, employees, and
trustees, but only to the extent that the alleged liability of the successor or
assign, officer, director, employee, or trustee of any Debtor or Lehigh
Hanson is based solely on its status as and in its capacity as a successor or
assign, officer, director, employee, or trustee of any Debtor's corporate
entity.

e.      The covenants set forth in Paragraph 12 (of the Settlement
Agreement) extend only to the Debtors, Lehigh Hanson and the persons described
in Paragraph 14 and do not extend to any other person.  Nothing in the Settlement
Agreement is intended as a covenant for any person or entity other than the
Debtors, the United States, the Settling Federal Agencies, Lehigh Hanson and the
persons described in Paragraph 14 (of the Settlement Agreement).  The Settling
Federal Agencies and the Debtors expressly reserve all Claims, demands, and
causes of action, either judicial or administrative, past, present, or future, in law or
equity, which they may have against all other persons, firms, corporations, entities
or predecessors of the Debtors or Lehigh Hanson (except those listed in Paragraph
1(d) (of the Settlement Agreement) above) for any matter arising at or relating in
any manner to the sites or Claims addressed herein.  Further, nothing in this
Settlement Agreement diminishes the right of the United States, pursuant to
Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to enter into
any settlement that gives rise to contribution protection for any person not a Party
to this Settlement Agreement.

f.      The covenants set forth in Paragraph 12 (of the Settlement
Agreement) do not pertain to any matters other than those expressly specified
therein.  The United States expressly reserves, and the Settlement Agreement is
without prejudice to, all rights against the Debtors, Lehigh Hanson and the

persons described in Paragraph 14 with respect to all matters other than those set forth in Paragraph 12 (of the Settlement Agreement). The United States also specifically reserves, and the Settlement Agreement is without prejudice to, any action based on: (i) a failure to meet a requirement of the Settlement Agreement and (ii) ownership and/or operation of parcels other than the Former Debtor-Owned/Operated Parcels listed in Paragraph 1(f) within the LDW Site. In addition, the United States reserves, and the Settlement Agreement is without prejudice to, all rights against the Debtors, Lehigh Hanson, and the persons described in Paragraph 14 (of the Settlement Agreement) with respect to the LDW Site for liability under federal or state law for acts by the Debtors or the persons described in Paragraph 14 (of the Settlement Agreement) that occur after the date of lodging of the Settlement Agreement. As used in the preceding sentence, the phrase "acts by the Debtors or the persons described in Paragraph 14 (of the Settlement Agreement) that occur after the date of lodging of this Settlement Agreement" does not include continuing releases related to conduct occurring before the date of lodging of the Settlement Agreement.

g.      Nothing in the Settlement Agreement shall be deemed to limit the authority of the United States to take any response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable statute or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to such authority, provided, however, that nothing in this sentence affects the covenants set forth in Paragraph 12 (of the Settlement Agreement). Nothing in the Settlement Agreement shall be deemed to limit the access or information-gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable statute or regulation, or to excuse the Debtors from any disclosure or notification requirements imposed by CERCLA or any other applicable statute or regulation.

h.      The Debtors and Lehigh Hanson covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States with respect to ownership and/or operation of the Former Debtor-Owned/Operated Parcels listed in Paragraph 1(f) at the LDW Site, including, but not limited to: (i) any direct or indirect claim for reimbursement from the Hazardous Substance Superfund; (ii) any claim under Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, or Section 7002(a) of RCRA, 42 U.S.C. § 6972(a); or (iii) any claim arising out of response activities at the LDW Site. Nothing in the Settlement Agreement shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

i.      The Parties agree, and by entering the Settlement Agreement the Court finds, that the Settlement Agreement constitutes a judicially-approved settlement pursuant to which each Debtor and Lehigh Hanson has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by

Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Settlement Agreement. The "matters addressed" in this Settlement Agreement are: (i) all response actions taken or to be taken, and all response costs incurred or to be incurred, at or in connection with the LDW Site by the United States, EPA or any potentially responsible parties with respect to releases of hazardous substances from the Former Debtor-Owned/Operated Parcels ; (ii) claims by the United States, DOI or potentially responsible parties for natural resource damages for injury to DOI trust resources (including related natural resource damage assessment costs) at or in connection with the Lower Duwamish River with respect to releases of hazardous substances from the Former Debtor-Owned/Operated Parcels; (iii) claims by the United States, NOAA or potentially responsible parties for natural resource damages for injury to NOAA trust resources (including related natural resource damage assessment costs) at or in connection with the Lower Duwamish River with respect to releases of hazardous substances from the Former Debtor-Owned/Operated Parcels.

j.      The Settlement Agreement constitutes a judicially-approved settlement pursuant to which each Debtor and Lehigh Hanson has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

k.      The Settlement Agreement shall be lodged with the Bankruptcy Court and shall thereafter be subject to a period of public comment following publication of notice of the Settlement Agreement in the *Federal Register*. The public comment period provided for in Paragraph 26 (of the Settlement Agreement) may run concurrently with any notice period required pursuant to Bankruptcy Rule 2002 or applicable local rule in connection with judicial approval of the Settlement Agreement.

l.      The "Effective Date" means the date on which the Settlement Agreement is approved by the Bankruptcy Court.

Additionally, the Parties have agreed to certain other terms and conditions, each set forth in the

Settlement Agreement.

## Public Notice and Comment Period

15.     Pursuant to the Settlement Agreement and to comply with federal

environmental laws and regulations, the Settlement Agreement must be lodged with the Court

and notice of the Settlement Agreement must be published in the Federal Register for a period of

not less than thirty (30) days for public comment.  At the conclusion of the public comment

period, the United States will file with the Court a summary of any comments received, as well

as responses to the comments, and at that time, if appropriate, the United States will file a motion

requesting the Court's approval of the Settlement Agreement.  The United States reserves the

right to withdraw or withhold consent if comments regarding the Settlement Agreement disclose

facts or considerations that indicate the Settlement Agreement is not in the public interest.

### Basis for Relief Requested

16.    This Court has authority to approve the Settlement pursuant to Bankruptcy

Rule 9019.  Key3Media Grp., Inc. v. Puliver.com Inc. (In re Key3Media Grp., Inc.), 336 B.R. 87,

92 (Bankr. D. Del. 2005).  Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  Compromises, such as the resolution of the claims set forth in the Settlement,

"are favored in bankruptcy" because they "minimize litigation and expedite the administration of

a bankruptcy case."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (citation

omitted); see also Crawford v. CIT Group/Commercial Servs. (In re Southern Hosiery

Mill, Inc.), 2012 Bankr. LEXIS 802, at *3 (Bankr. W.D.N.C. Jan. 26, 2012) ("It is well

established that compromises are favored in bankruptcy.").

17.    In evaluating the proposed Settlement, the Court "need conduct neither an

exhaustive investigation into the validity of, nor a mini-trial on, the merits of the claims sought to

be compromised."  In re Southern Hosiery Mill, Inc., 2012 Bankr. LEXIS at *3-4.  Rather, the

Court should merely examine "if the compromise is fair, reasonable, and in the best interest of

the estate."  In re Louise's Inc., 211 B.R. 798, 801 (Bankr. D. Del. 1997); see In re Marvel Entm't

Grp., Inc., 222 B.R. 243, 250 (D. Del. 1998) (concluding that the proposed settlement was in the

best interest of the estate).  The "best interest" test requires that the proposed settlement be "fair

and equitable."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

<u>Anderson</u>, 390 U.S. 414, 424 (1968) (analyzing settlement of claims under the Bankruptcy Act);

<u>In re Martin</u>, 91 F.3d at 393; <u>Key3Media Grp.</u>, 336 B.R. at 92.  In evaluating the fairness of a

settlement, a court does not have to be convinced that the settlement is the best possible

compromise, but only that the settlement "falls within the reasonable range of litigation

possibilities."  <u>In re Washington Mutual, Inc.</u>, 442 B.R. 314, 328 (Bankr. D. Del. 2011); <u>In re</u>

<u>Coram Healthcare Corp.</u>, 315 B.R. 321, 330 (Bankr. D. Del. 2004); <u>see also</u> <u>In re Worldcom,</u>

<u>Inc.</u>, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (finding the bankruptcy court "need only

'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of

reasonableness'" (quoting <u>In re Teltronics Serv., Inc.</u>, 762 F.2d 185, 189 (2d Cir. 1985))).

18.    This Court has identified four factors that courts should consider in

determining whether a settlement falls within the lowest point in the range of reasonableness:

(a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the

complexity of the litigation involved, and the expense, inconvenience and the delay necessarily

attending it; and (d) the paramount interest of the creditors.  <u>In re Southern Hosiery Mill, Inc.</u>,

2012 Bankr. LEXIS at *4 (citing <u>In re Martin</u>, 91 F.3d at 393).

***Application of Relevant Standards***

19.    The Debtors' entry into the Settlement is a sound exercise of their business

judgment and in the best interests of their estates and creditors.  The Settlement is the result of

arm's-length bargaining between the Debtors, Lehigh Hanson and the United States, and it

provides for a beneficial and fair resolution of the disputes between the Parties.

20.    The Debtors believe they have viable arguments regarding the extent of

their liability at the Site and therefore, the amount of the claims that may be recoverable from the

Debtors.  However, based on their review of information provided by the United States and other

parties, as well as information the Debtors have independently developed, the Debtors believe

-13-

NAI-1506609906v7

that the proposed allowed amounts of the U.S. Proofs of Claim establish their liability to the

United States in an amount that is fair and reasonable under the circumstances, and accordingly,

the Debtors do not anticipate they would obtain a materially more favorable result in litigation.

21.    Additionally, the parties have been negotiating and working with the

United States and the LDW Claimants on disputes related to the Site for years, in large part due

to the complexities of these claims and the related environmental conditions at the Site.

Engaging in further negotiations about or litigation of the U.S. Proofs of Claim would be

expensive, inconvenient and unlikely to result in a better outcome for the Debtors, as the

Settlement provides for a final resolution of the U.S. Proofs of Claims (including protection from

contribution actions or claims) and paves the way for final resolutions of the LDW Claimants'

claims.

22.    Moreover, finalization of the Settlement and related settlements will

further the efforts of the Debtors to move forward with confirmation of their plan of

reorganization, which proposes to satisfy the environmental claims and other general unsecured

claims in full and treat asbestos claims in a manner that is acceptable to the Asbestos Committee

and the Future Claimants' Representative.

23.    Accordingly, the Debtors respectfully submit that the Settlement (a) is fair

and reasonable, (b) is in the best interests of their chapter 11 estates and creditors and (c) should

be approved pursuant to Bankruptcy Rule 9019.

### Notice

24.    Notice of this motion has been provided to:  (a) the Bankruptcy

Administrator; (b) counsel to the Asbestos Committee; (c) Lehigh Hanson, Inc.; (d) counsel to

the Creditors' Committee; (e) counsel to the Future Claimants' Representative; (f) the United

States; (g) counsel to The Boeing Company; (h) counsel to the Port of Seattle; (i) counsel to the

NAI-1506609906v7

City of Seattle; (j) counsel to King County, Washington; (k) counsel to Ash Grove Cement Co.

and (l) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that,

in light of the nature of the relief requested, no other or further notice need be provided.

### No Prior Request

25.     No prior request for the relief sought herein has been made to this Court or

any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as Exhibit C, granting:  (i) the relief requested herein;

and (ii) such other and further relief as the Court may deem proper.

Dated:   June 12, 2019              Respectfully submitted,
         (Charlotte, NC)

  /s/ John R. Miller, Jr.
C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina  28202
Telephone:  (704) 334-0891
Facsimile: (704) 377-1897
E-mail:   rrayburn@rcdlaw.net
          jmiller@rcdlaw.net

-and-

Gregory M. Gordon (TX 08435300)
Amanda S. Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
         asrush@jonesday.com

ATTORNEYS FOR DEBTORS

-15-

## Exhibit A

**Charles E. McChesney II Declaration**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.,*[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**DECLARATION OF CHARLES E. MCCHESNEY II**
**IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER**
**APPROVING SETTLEMENT WITH THE UNITED STATES**

1.     I am a Vice President, the Secretary and a Director of both Kaiser Gypsum

Company, Inc. ("Kaiser Gypsum") and Hanson Permanente Cement, Inc. ("HPCI"), which are

debtors in the above-captioned chapter 11 cases (together, the "Debtors").  I have held these

positions with the Debtors since October 1, 2010.

2.     I am also a Vice President, the Secretary, the Chief Legal Counsel and a

Director of Three Rivers Management, Inc. ("TRMI"), an affiliate of the Debtors, and have

served in those capacities since October 1, 2010.  Prior to that time, I was an Assistant Secretary

of TRMI and have been an employee of TRMI since May 2005.  Pursuant to a contract with the

Debtors, TRMI provides asbestos and environmental liability management services for, and acts

as agent on behalf of, each of the Debtors.

3.     I submit this declaration in support of the Debtors' Motion for an Order

Approving Settlement with the United States (the "Motion").[2]  All facts set forth in this

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

[2]     All capitalized terms not otherwise defined in this declaration shall have the meanings ascribed to them in the Motion.

declaration are based upon my personal knowledge, my review of relevant documents and/or
information supplied to me by other members of the Debtors' management or the Debtors'
professionals.  If called upon to testify, I could and would testify competently to the facts set
forth herein.

## The Debtors' History at the Site

4.      Each Debtor owned and operated facilities in the Seattle area at various
times between 1927 and 1987.  For 29 months between 1947 and 1949, a predecessor of HPCI
(referred to collectively with HPCI as "HPCI") leased and operated a cement manufacturing
plant located at 3801 East Marginal Way, Seattle, Washington.  From 1944 to 1987, HPCI
owned and operated a bulk cement receiving, storage and distribution facility at 5975 East
Marginal Way, Seattle, Washington, and from 1965 to 1987, HPCI leased and then owned
property at 5906 West Marginal Way SW, Seattle, Washington, where HPCI operated a second
bulk cement receiving, storage and distribution facility.  All of these facilities were on or
adjacent to the Site.

5.      In 1927 and 1928, Kaiser Gypsum procured the land for and constructed
the cement manufacturing facility at 3801 East Marginal Way, which Kaiser Gypsum then
operated for 31 months before leasing the facility to other operators until the facility was sold by
Kaiser Gypsum in 1949.  In 1952 and 1953, Kaiser Gypsum procured the land for and
constructed a gypsum products manufacturing facility at 5931 East Marginal Way, Seattle,
Washington, which Kaiser Gypsum owned and operated from 1954 until the facility was sold in
1978.  From 1969 to 1976, Kaiser Gypsum leased the land and operated a gypsum accessories
manufacturing facility at 6335 First Avenue South, Seattle, Washington.  All of these facilities
were on or adjacent to the Site.

NAI-1506609906v7

6.     By 1978, Kaiser Gypsum had sold all its operations in the Seattle area and by 1987, HPCI had ceased operations or sold all its facilities in the Seattle area.

7.     I understand that the Site involves more than 100 PRPs, including the Port of Seattle, The Boeing Company, the City of Seattle, King County, Washington and the Debtors. In February 2010, the EPA served each of the Debtors with a request for information pursuant to Section 104(e) of the CERCLA, and each of the Debtors responded to that request with an initial response in June 2010 and a supplemental response the following year, in December 2011.

8.     I understand that the LDW Claimants have completed a RI/FS of the Site pursuant to the requirements of a joint Administrative Order on Consent to Conduct a RI/FS between the LDW Claimants and the EPA.  The LDW Claimants also engaged in cleanup of various "early action areas" identified by such LDW Claimants as locations that would require cleanup under any remedial scenario.  In 2013, the LDW Claimants also agreed to perform additional studies of the Site, which remain ongoing.

### Efforts to Resolve the Liabilities at the Site

9.     In April 2014, HPCI, for itself and for Kaiser Gypsum, entered into a MOA with over thirty participating parties, pursuant to which the MOA signatories agreed to a process for allocating the response costs incurred in connection with investigation and remediation of the Site.  In November 2014, the EPA released a ROD that prescribes a cleanup plan for the Site that the EPA estimates will result in remediation costs of $342 million.  The EPA is presently working with the LDW Claimants to complete certain additional investigations in advance of implementing the remediation called for in the ROD.  In addition to the EPA, the Washington Department of Ecology is also active with respect to the Site.

### The United States' Proofs of Claim

10.     I understand that each of the Settling Federal Agencies and the LDW

-3-

Claimants filed a proof of claim against both Kaiser Gypsum and HPCI with respect to liabilities

at the Site and that Ash Grove, another PRP at the Site, filed additional proofs of claim on behalf

of the United States with respect to liabilities at the Site.

11.     The Debtors and each of the LDW Claimants have worked in good faith to

resolve their disputes related to the Site, and their efforts resulted in settlement agreements

resolving all of those parties' claims against the Debtors related to the Site.  I understand that the

Court has entered orders approving these settlements agreements and that, to be fully effective,

the settlement agreements require the entry of a settlement agreement by the Debtors and the

United States concerning the Debtors' liabilities at the Site.

## Proposed Settlement

12.     I believe that the Debtors' entry into the Settlement is a sound exercise of

their business judgment and in the best interests of their estates and creditors.  The Settlement is

the result of arm's-length bargaining between the Debtors, Lehigh Hanson and the United States,

and it provides for a beneficial and fair resolution of the disputes between the Parties.

13.     I believe that the Debtors have viable arguments regarding the extent of

their liability at the Site and therefore, the amount of the claims that may be recoverable from the

Debtors.  However, based on reviewing the information provided by the United States and other

parties, as well as information the Debtors have independently developed, I believe that the

proposed allowed amounts of the U.S. Proofs of Claim establish the Debtors' liability to the

United States in an amount that is fair and reasonable under the circumstances, and accordingly,

I do not anticipate they would obtain a materially more favorable result in litigation.

14.     Additionally, the parties have been negotiating and working with the

United States and the LDW Claimants on disputes related to the Site for years, in large part due

NAI-1506609906v7

to the complexities of the parties' claims and the related environmental conditions at the Site.  I

believe that engaging in further negotiations or litigation of the U.S. Proofs of Claim would be

expensive, inconvenient and unlikely to result in a better outcome for the Debtors, as the

Settlement provides for a final resolution of the U.S. Proofs of Claims (including protection from

contribution actions or claims) and paves the way for final resolutions of the LDW Claimants'

claims.

15.    Lastly, I believe that finalization of the Settlement and related settlements

with the LDW Claimants will further the efforts of the Debtors to move forward in their chapter

11 cases.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  June 12, 2019

 /s/ Charles E. McChesney II
Charles E. McChesney II

NAI-1506609906v7

**<u>Exhibit B</u>**

**Settlement Agreement**

NAI-1506609906v7

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)**

| | |
|---|---|
| In re: | Chapter 11 |
| KAISER GYPSUM COMPANY, INC., *et al*., | Case No. 16-31602 (JCW) |
| Debtors. | (Jointly Administered) |

**<u>SETTLEMENT AGREEMENT</u>**

## TABLE OF CONTENTS

I.      RECITALS ...................................................................................................1

II.     DEFINITIONS...........................................................................................3

III.    JURISDICTION .........................................................................................7

IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT ....................................7

V.      ALLOWED CLAIMS...................................................................................7

VI.     TREATMENT OF ALLOWED CLAIMS ........................................................10

VII.    CREDITS AND SITE ACCOUNTS ................................................................11

VIII.   RESOLUTION OF PROOFS OF CLAIM .........................................................12

IX.     DISTRIBUTION/PAYMENT INSTRUCTIONS .................................................12

X.      COVENANTS AND RESERVATIONS..............................................................13

XI.     EFFECT OF SETTLEMENT; CONTRIBUTION ...............................................17

XII.    NOTICES AND SUBMISSIONS ....................................................................18

XIII.   JUDICIAL APPROVAL AND PUBLIC COMMENT .........................................20

XIV.    PLAN OF REORGANIZATION .....................................................................21

XV.     INTEGRATION, AMENDMENTS, AND COUNTERPARTS ...........................22

XVI.    RETENTION OF JURISDICTION...................................................................22

# I.  RECITALS

WHEREAS, Debtor Kaiser Gypsum Company, Inc. ("Kaiser Gypsum") and

Debtor Hanson Permanente Cement, Inc. ("HPCI") (collectively, the "Debtors")

commenced reorganization cases by filing with the United States Bankruptcy Court for

the Western District of North Carolina (the "Bankruptcy Court" or "Court") voluntary

petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") on

September 30, 2016 (the "Petition Date"), which cases are being jointly administered as

*In re: Kaiser Gypsum Company, Inc. et al.*, Case No. 16-31602 (the "Bankruptcy Case");

WHEREAS, the United States, on behalf of the United States Environmental

Protection Agency ("EPA"), the United States Department of the Interior ("DOI"), and

the National Oceanic and Atmospheric Administration, on behalf of the Department of

Commerce ("NOAA") (collectively, the "Settling Federal Agencies"), contends that the

Debtors are liable under the Comprehensive Environmental Response, Compensation,

and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for costs incurred and to be

incurred by the United States in response to releases and threats of releases of hazardous

substances at or in connection with the Lower Duwamish Waterway Superfund Site

("LDW Site"), located in Seattle, Washington as well as natural resource damages and

costs of natural resource damage assessment at or in connection with the Lower

Duwamish River, as defined below;

WHEREAS, the United States, on behalf of the Settling Federal Agencies, has

filed proofs of claim (Nos. 6, 7, 8, 9, 10, and 11) (the "U.S. Proofs of Claim") against

Kaiser Gypsum and HPCI involving certain Former Debtor-Owned/Operated Parcels (as

defined below) located within the LDW Site;

WHEREAS, Ash Grove Cement Company filed proofs of claim (Nos. 648, 649, 650, 651, 652 and 653) (the "Ash Grove 501(b) Proofs of Claim"), on behalf of the United States, pursuant to Section 501(b) of the Bankruptcy Code. 11 U.S.C. § 501(b), asserting that Debtors are liable for costs incurred and to be incurred by the United States in response to releases and threats of releases of hazardous substances in connection with a Former Debtor-Owned/Operated Parcel located within the LDW Site and natural resource damages and costs of natural resource damage assessment at or in connection with such parcel;

WHEREAS, the U.S. Proofs of Claim set forth the United States' position that the Debtors' injunctive obligation to comply with work obligations, including but not limited to cleanup obligations, under court orders, administrative orders, and environmental statutes, regulations, licenses, and permits is not dischargeable pursuant to Section 1141 of the Bankruptcy Code;

WHEREAS, the Debtors disagree with the United States' contentions, and but for this Settlement Agreement, would dispute, in whole or in part, the U.S. Proofs of Claim and the Ash Grove 501(b) Proofs of Claim, including the United States' contentions regarding the non-dischargeability of environmental work obligations;

WHEREAS, Debtors contend that Kaiser Gypsum and HPCI, and/or predecessors of Kaiser Gypsum and HPCI, owned and operated facilities on or adjacent to the Lower Duwamish Waterway at various times between 1927 and 1987.  Lehigh Hanson, Inc. ("Lehigh Hanson") became an indirect owner of Kaiser Gypsum and HPCI in 2007 when Lehigh Hanson's ultimate parent company, HeidelbergCement AG, through a subsidiary, acquired the stock of the former ultimate parent company of Kaiser Gypsum and HPCI.

2

As a result, Lehigh Hanson was not the parent company of, or otherwise affiliated with, Kaiser Gypsum and HPCI during the time periods when they or their predecessors owned and operated the Former Debtor-Owned/Operated Parcels on the Lower Duwamish Waterway.

WHEREAS, the Debtors and the Settling Federal Agencies wish to resolve their differences with respect to the U.S. Proofs of Claim and the Ash Grove 501(b) Proofs of Claim and address other matters as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the contested positions of the Parties that is entered into solely for purposes of this settlement, and the Parties reserve their legal arguments as to any issues involved in other matters;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, including, without limitation, the covenants set forth in Paragraphs 12 and 18, and subject to the provisions of Paragraphs 25-28, intending to be legally bound hereby, the Parties hereby agree to the terms and provisions of this Settlement Agreement;

WHEREAS, this Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without any admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the Parties by their attorneys and authorized officials, it is hereby agreed as follows:

## II.  **DEFINITIONS**

1.     Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA, other environmental laws, or their regulations or

3

in the Bankruptcy Code shall have the meaning assigned to them therein.  In addition,

terms defined in the recitals shall have the meaning set forth therein.  Whenever terms

listed below are used in this Settlement Agreement, the following definitions shall apply:

      a.    "Allowed" has the meaning set forth in the Plan of Reorganization.

      b.    "Claim" has the meaning provided in Section 101(5) of the Bankruptcy

Code.

      c.    "Day" means a calendar day, except that, in computing any period of

time under this Settlement Agreement, where the last day would fall on a Saturday,

Sunday, or federal holiday, the period shall run until the close of business of the next

working day.

      d.    "Debtors" shall mean the following:

    1.    Kaiser Gypsum Company, Inc., a North Carolina corporation, including the following of its subsidiaries, predecessors in interest, predecessors in name and predecessors by merger that owned and/or operated during the relevant time periods at one or more of the Former Debtor Owned/Operated Parcels:
- Pacific Coast Cement Company, a Washington corporation;
- Kaiser Gypsum Company, a California corporation; and
- Kaiser Gypsum Company, Inc., a Washington corporation; and

    2.    Hanson Permanente Cement, Inc., an Arizona corporation, including the following of its subsidiaries, predecessors in interest, predecessors in name and predecessors by merger that owned and/or operated at one or more of the Former Debtor Owned/Operated Parcels:
- Permanente Cement Company, a California corporation;
- Glacier Sand & Gravel Company, a Washington corporation;
- Kaiser Holdings, Inc., a Washington Corporation;
- Kaiser Cement and Gypsum Corporation, a California corporation;
- Kaiser Cement Corporation, a California corporation;
- Kaiser Cement Corporation, a Delaware corporation; and
- Kaiser Cement Corporation, an Arizona corporation.

e.    "Effective Date" means the date on which this Settlement Agreement is

approved by the Bankruptcy Court.

f.    "Former Debtor-Owned/Operated Parcels" means the following parcels

located within the LDW Site and the operations of Debtors at or associated with such

parcels:

1.  5906 West Marginal Way, S.W., Seattle, WA (5906 West Marginal Way) (Map and Legal Description Attached as Exhibit A);

2.  5975 East Marginal Way, S., Seattle, WA (5975 East Marginal Way) (Map and Legal Description Attached as Exhibit B);

3.  5931 East Marginal Way, S., Seattle, WA (5931 East Marginal Way) (Map and Legal Description Attached as Exhibit C);

4.  6335 First Ave., S., Seattle, WA (6335 First Ave.) (Map and Legal Description Attached as Exhibit D);

5.  3801 East Marginal Way, Seattle, WA (3801 East Marginal Way) (Current Location of Ash Grove Cement Facility – Map and Legal Description Attached as Exhibit E);

g.    "General Unsecured Claim" has the meaning set forth in the Plan of

Reorganization.

h.    "Hazardous Substance Superfund" means the Hazardous Substance

Superfund established pursuant to 26 U.S.C. § 9507.

i.    "Lower Duwamish River" or "LDR" means any portion of the

Duwamish Waterway (including the shoreline, intertidal areas, tributaries, estuaries and

bottom sediments) in the State of Washington where hazardous substances or discharge

of oil originating from the property identified in the definition of Former Debtor-

Owned/Operated Parcels have come to be located. The LDR includes the in-waterway

portions of three Superfund Sites: the Harbor Island Superfund Site (located south of

5

downtown Seattle, Washington, including the East Waterway and West Waterway that

flow from the south end of Harbor Island north to Elliott Bay), the Lower Duwamish

Waterway Superfund Site, and the Lockheed West Superfund Site (areas in and around

the site formerly known as Lockheed Shipyard No. 2, located near the confluence of the

West Waterway and Elliott Bay).

j.   "LDW Site" means the Lower Duwamish Waterway Superfund Site,

listed on the NPL at 66 Fed. Reg. 47583, 47586 (Sept. 13, 2001) and shall be construed to

include all areas of the LDW Site as defined by EPA for purposes of the NPL, including

any later expansion of such site as may be determined by EPA, and any natural resources

affected or potentially affected by the release or threatened release of hazardous

substances at or from such site.

k.   "NPL" means the National Priorities List, 40 C.F.R. Part 300.

l.   "Parties" means the Debtors, and the United States, (any one of

which, individually, shall be referred to herein as a "Party").

m.   "Plan of Reorganization" or "Plan" means the Second Amended Joint

Plan of Reorganization, dated November 28, 2018 (including as it may be revised,

amended, and supplemented from time to time).

n.   "Post-Petition" refers to the time period from and after the Petition

Date.

o.   "Pre-Petition" refers to the time period prior to the Petition Date.

p.   "RCRA" means the Resource Conservation and Recovery Act,

42 U.S.C. §§ 6901-6992k.

q.   "United States" means the United States of America and each

department, agency, and instrumentality of the United States, including each of the

Settling Federal Agencies and each successor department, agency, or instrumentality of

the Settling Federal Agencies.

   r.  "United States' Proofs of Claim" means Proofs of Claim Numbers 7,

9, and 10 filed against Debtor Kaiser Gypsum and Proofs of Claim Numbers 6, 8, and 11

filed against Debtor HPCI.

### III.  JURISDICTION

  2.  The Court has jurisdiction over the subject matter hereof pursuant to

28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b).  The Parties

consent to the authority of the Bankruptcy Court to enter final orders, judgments and

decrees with respect to such subject matter.

### IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

  3.  This Settlement Agreement applies to, is binding upon, and shall inure to the

benefit of the United States, the Settling Federal Agencies, the Debtors, Lehigh Hanson

and the legal successors and assigns of Lehigh Hanson and the Debtors (including, but

not limited to, the Debtors in any new or reorganized form as a result of the Bankruptcy

Cases), and any trustee, examiner, or receiver appointed in the Bankruptcy Cases in their

role as such.

### V.  ALLOWED CLAIMS

  4.  The Settling Federal Agencies shall have Allowed General Unsecured

Claims to the extent set forth in this Paragraph 4.  The United States shall receive no

distributions or payments from the Debtors in the Bankruptcy Cases with respect to the

liabilities and obligations of the Debtors asserted in the U.S. Proofs of Claim and the Ash

Grove 501(b) Proofs of Claim with respect to the LDW Site other than in respect of the

proofs of claim set forth in Paragraphs 4(a)-(g) (the "Allowed Proofs of Claim"). The

amounts allocated to each Allowed Proof of Claim specified below are solely for

Debtors' purposes in this Bankruptcy proceeding, and do not reflect any allocation

determined by the EPA, DOI and/or NOAA. The EPA shall be entitled to use, distribute,

assign, and spend any funds received from Debtors as they determine is appropriate at the

LDW Site consistent with CERCLA. DOI and/or NOAA shall be entitled to use,

distribute, assign, and spend any funds received from Debtors as they determine is

appropriate at the Lower Duwamish River consistent with CERCLA. Furthermore,

nothing herein shall in anyway resolve any liability of Ash Grove Cement Company to

the United States associated with its ownership or operation of the parcel described in

Paragraph 1.f. 7.

    a.    <u>Proof of Claim No. 10.</u> The United States on behalf of EPA shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 10

in the amount of $1,300,000.00 against Debtor Kaiser Gypsum in its bankruptcy

case;

    b.    <u>Proof of Claim No. 11.</u>  The United States on behalf of EPA shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 11

in the amount of $1,300,000.00 against Debtor HPCI in its bankruptcy case;

    c.    <u>Proof of Claim No. 9.</u>  The United States on behalf of NOAA shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 9 in

the amount of $200,000.00 against Debtor Kaiser Gypsum in its bankruptcy case;

    d.    <u>Proof of Claim No. 6.</u>  The United States on behalf of NOAA shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 6 in

the amount of $200,000.00 against Debtor HPCI in its bankruptcy case;

      e.       <u>Proof of Claim No. 7.</u>  The United States on behalf of DOI shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 7 in

the amount of $200,000.00 against Debtor Kaiser Gypsum in its bankruptcy case;

and

      f.       <u>Proof of Claim No. 8.</u>  The United States on behalf of DOI shall

have an Allowed General Unsecured Claim with respect to Proof of Claim No. 8 in

the amount of $200,000.00 against Debtor HPCI in its bankruptcy case.

      g.       The Ash Grove 501(b) Proofs of Claim.  The Ash Grove 501(b)

Proofs of Claim shall be Allowed General Unsecured Claims in the following

amounts against the following Debtors:

            i.       Proof of Claim No. 648.  The United States on behalf of

EPA shall have an Allowed General Unsecured Claim in the amount of

$325,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

            ii.       Proof of Claim No. 653.  The United States on behalf of

EPA shall have an Allowed General Unsecured Claim in the amount of

$325,000.00 against Debtor HPCI in its bankruptcy case.

            iii.       Proof of Claim No. 651.  The United States on behalf of

NOAA shall have an Allowed General Unsecured Claim in the amount of

$50,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

iv.      Proof of Claim No. 650.  The United States on behalf of

NOAA shall have an Allowed General Unsecured Claim in the amount of

$50,000.00 against Debtor HPCI in its bankruptcy case.

v.      Proof of Claim No. 649.  The United States on behalf of

DOI shall have an Allowed General Unsecured Claim in the amount of

$50,000.00 against Debtor Kaiser Gypsum in its bankruptcy case.

vi.      Proof of Claim No. 652.  The United States on behalf of

DOI shall have an Allowed General Unsecured Claim in the amount of

$50,000.00 against Debtor HPCI in its bankruptcy case.

## VI.    TREATMENT OF ALLOWED CLAIMS

5.    All Allowed General Unsecured Claims authorized by this Settlement

Agreement, (i) shall receive the same treatment under the Plan of Reorganization, without

discrimination, as all other Allowed General Unsecured Claims, with all attendant rights

provided by the Bankruptcy Code and other applicable law, and (ii) shall not be entitled

to any priority in distribution over other Allowed General Unsecured Claims.  In no event

shall the General Unsecured Claims allowed pursuant to this Settlement Agreement be

subordinated to any other Allowed General Unsecured Claims pursuant to any provision

of the Bankruptcy Code or other applicable law that authorizes or provides for

subordination of allowed Claims, including, without limitation, Sections 105, 510, and

726(a)(4) of the Bankruptcy Code.

6.    The treatment of Claims as Allowed General Unsecured Claims under this

Settlement Agreement is without prejudice to any right of the United States to set off,

against the debts underlying such Claims, any debts owed to a particular Debtor or

Debtors.

## VII. CREDITS AND SITE ACCOUNTS

7.    With respect to the Allowed General Unsecured Claims set forth in

Paragraph 4 for EPA, only the amount of cash received by EPA (and net cash received

upon sale of any non-cash distributions) pursuant to this Settlement Agreement for such

Allowed General Unsecured Claim, and not the total amount of the Allowed General

Unsecured Claim, shall be credited as a recovery by EPA for the LDW Site, which credit

shall reduce the liability of non-settling potentially responsible parties to EPA.  With

respect to the Allowed General Unsecured Claims set forth in Paragraph 4 for DOI and/or

NOAA, only the amount of cash received by DOI and/or NOAA (and net cash received

upon sale of any non-cash distributions) pursuant to this Settlement Agreement for such

Allowed General Unsecured Claim, and not the total amount of the Allowed General

Unsecured Claim, shall be credited as a recovery by DOI and/OR NOAA for the Lower

Duwamish River, which credit shall reduce the liability of non-settling potentially

responsible parties to DOI and/or NOAA.

8.    Any cash distributions or proceeds of any non-cash distributions that EPA

receives for the LDW Site in respect of the Allowed Proofs of Claim shall be deposited

by EPA in a special account established by EPA for the LDW Site within the Hazardous

Substance Superfund pursuant to Section 122(b)(3), 42 U.S.C. § 9622(b)(3), to be

retained and used to conduct or finance response actions at or in connection with the

LDW Site, or to be transferred to the Hazardous Substance Superfund.

## VIII.  RESOLUTION OF PROOFS OF CLAIM

9.    The U.S. Proofs of Claim and the Ash Grove 501(b) Proofs of Claim shall be

deemed allowed in accordance with the terms of this Settlement Agreement.  Moreover,

the approval of this Settlement Agreement by the Court, together with the proofs of claim

referenced in the preceding sentence, shall be deemed to satisfy any requirement for the

Settling Federal Agencies to file in the Bankruptcy Cases any claim, request, or demand

for the distributions and payments provided for herein.  No further proof of claim or other

request or demand by the Settling Federal Agencies shall be required.  Any and all

claims, requests, or demands deemed to be filed pursuant to this Paragraph 9 shall also be

deemed satisfied in full in accordance with the terms of this Settlement Agreement.

## IX.   DISTRIBUTION/PAYMENT INSTRUCTIONS

10.   Cash distributions and payments to the United States in respect of the

Allowed Proofs of Claim shall be made at https://www.pay.gov or by FedWire Electronic

Funds Transfer to the United States Department of Justice account in accordance with

instructions, including a Consolidated Debt Collection System ("CDCS") number, to be

provided to the Debtors by the Financial Litigation Unit of the United States Attorney's

Office for the Western District of North Carolina.

11.   At the time of any distribution or payment in respect of the Allowed Proofs

of Claim, the Debtors shall transmit written confirmation of such distribution or payment

to the United States at the addresses specified in Paragraph 24, and to the EPA Cincinnati

Finance Office by email at cinwd_acctsreceivable@epa.gov, with a reference to

Bankruptcy Case Number 16-31602 (USBC W.D. N.C.), the CDCS number, and the

applicable Site/Spill ID number 10NQ for the LDW Site. For wire transfer to NOAA,

send a notification email to advise that the transfer is forthcoming, referencing "LDR:

Bankruptcy: Kaiser Gypsum Settlement Agreement" and to Jared Piaggione

(jared.piaggione@noaa.gov) and referencing to the Automated Clearing House; Routing:

071000013, Account: 11-13801.

## X.    <u>COVENANTS AND RESERVATIONS</u>

12.   In consideration of all of the foregoing, including, without limitation, the

distributions and/or payments that will be made and the Allowed General Unsecured

Claims authorized pursuant to the terms of this Settlement Agreement, and except as

specifically provided in Paragraphs 15-17:

a.   The United States and EPA covenant not to file a civil action or take

administrative action against the Debtors and Lehigh Hanson pursuant to Sections 106 or

107 of CERCLA, 42 U.S.C. §§ 9606 or 9607 for the LDW Site, with respect to releases

of hazardous substances, pollutants, or contaminants from the Former Debtor –

Owned/Operated Parcels listed in Paragraph 1(f).

b.   The United States and DOI covenant not to file a civil action or take

administrative action against the Debtors and Lehigh Hanson pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607, Section 311 of the Clean Water Act, 33 U.S.C. § 1321; and

Section 1002(a) of the Oil Pollution Act, 33 U.S.C. § 2702(a) for the LDR, with respect

to releases of hazardous substances from the Former Debtor –Owned/Operated Parcels

listed in Paragraph 1(f).

c.   The United States and NOAA covenant not to file a civil action or take

administrative action against the Debtors and Lehigh Hanson pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607, Section 311 of the Clean Water Act, 33 U.S.C. § 1321; and

Section 1002(a) of the Oil Pollution Act, 33 U.S.C. § 2702(a) for the LDR, with respect

to releases of hazardous substances from the Former Debtor –Owned/Operated Parcels

listed in Paragraph 1(f).

d.   The covenants set forth in this Paragraph 12 shall take effect on the Effective

Date.

13.   This Settlement Agreement in no way impairs the scope and effect of the

Debtors' discharge under Section 1141 of the Bankruptcy Code.

14.   Without in any way limiting the covenants set forth in Paragraph 12 (and the

reservations thereto set forth in Paragraphs15-17), and notwithstanding any other

provision of this Settlement Agreement, such covenants shall also apply to the Debtors'

and Lehigh Hanson's successors and assigns, officers, directors, employees, and trustees,

but only to the extent that the alleged liability of the successor or assign, officer, director,

employee, or trustee of any Debtor or Lehigh Hanson is based solely on its status as and

in its capacity as a successor or assign, officer, director, employee, or trustee of any

Debtor's corporate entity.

15.   The covenants set forth in Paragraph 12 extend only to the Debtors, Lehigh

Hanson and the persons described in Paragraph 14 and do not extend to any other person.

Nothing in this Settlement Agreement is intended as a covenant for any person or entity

other than the Debtors, the United States, the Settling Federal Agencies, Lehigh Hanson

and the persons described in Paragraph 14.  The Settling Federal Agencies and the

Debtors expressly reserve all Claims, demands, and causes of action, either judicial or

administrative, past, present, or future, in law or equity, which they may have against all

other persons, firms, corporations, entities or predecessors of the Debtors or Lehigh

14

Hanson (except those listed in Paragraph 1(d) above) for any matter arising at or relating in any manner to the sites or Claims addressed herein.  Further, nothing in this Settlement Agreement diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to enter into any settlement that gives rise to contribution protection for any person not a Party to this Settlement Agreement.

16.    The covenants set forth in Paragraph 12 do not pertain to any matters other than those expressly specified therein.  The United States expressly reserves, and this Settlement Agreement is without prejudice to, all rights against the Debtors, Lehigh Hanson and the persons described in Paragraph 14 with respect to all matters other than those set forth in Paragraph 12.  The United States also specifically reserves, and this Settlement Agreement is without prejudice to, any action based on:  (i) a failure to meet a requirement of this Settlement Agreement and (ii) ownership and/or operation of parcels other than the Former Debtor-Owned/Operated Parcels listed in Paragraph 1(f) within the LDW Site.  In addition, the United States reserves, and this Settlement Agreement is without prejudice to, all rights against the Debtors, Lehigh Hanson, and the persons described in Paragraph 14 with respect to the LDW Site for liability under federal or state law for acts by the Debtors or the persons described in Paragraph 14 that occur after the date of lodging of this Settlement Agreement.  As used in the preceding sentence, the phrase "acts by the Debtors or the persons described in Paragraph 14 that occur after the date of lodging of this Settlement Agreement" does not include continuing releases related to conduct occurring before the date of lodging of this Settlement Agreement.

17.    Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take any response action under Section 104 of CERCLA, 42

U.S.C. § 9604, or any other applicable statute or regulation, or to alter the applicable

legal principles governing judicial review of any action taken by the United States

pursuant to such authority, provided, however, that nothing in this sentence affects the

covenants set forth in Paragraph 12.  Nothing in this Settlement Agreement shall be

deemed to limit the access or information-gathering authority of the United States under

Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable

statute or regulation, or to excuse the Debtors from any disclosure or notification

requirements imposed by CERCLA or any other applicable statute or regulation.

18.   The Debtors and Lehigh Hanson covenant not to sue and agree not to assert

or pursue any claims or causes of action against the United States with respect to

ownership and/or operation of the Former Debtor-Owned/Operated Parcels listed in

Paragraph 1(f) at the LDW Site, including, but not limited to:  (i) any direct or indirect

claim for reimbursement from the Hazardous Substance Superfund; (ii) any claim under

Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, or Section 7002(a) of

RCRA, 42 U.S.C. § 6972(a); or (iii) any claim arising out of response activities at the

LDW Site.  Nothing in this Settlement Agreement shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. §

9611, or 40 C.F.R. § 300.700(d).

19.   Notwithstanding any other provision of this Settlement Agreement, the

Debtors and Lehigh Hanson reserve, and this Settlement Agreement is without prejudice

to, claims against the United States in the event any claim is asserted by the United States

against the Debtors and Lehigh Hanson pursuant to any of the reservations set forth in

Paragraph 16, other than for failure to meet a requirement of this Settlement Agreement,

but only to the extent that the Debtors' claims arise from the same response action,

response costs, or damages that the United States is seeking pursuant to the applicable

reservation.

## XI.    EFFECT OF SETTLEMENT; CONTRIBUTION

20.   The Parties agree, and by entering this Settlement Agreement the Court finds,

that this Settlement Agreement constitutes a judicially-approved settlement pursuant to

which each Debtor and Lehigh Hanson has, as of the Effective Date, resolved liability to

the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. §

9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution

actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise

provided by law, for the "matters addressed" in this Settlement Agreement.  The "matters

addressed" in this Settlement Agreement are: (i) all response actions taken or to be taken,

and all response costs incurred or to be incurred, at or in connection with the LDW Site

by the United States, EPA or any potentially responsible parties with respect to releases

of hazardous substances from the Former Debtor-Owned/Operated Parcels listed in

Paragraph 1(f) ; (ii) claims by the United States, DOI or potentially responsible parties

for natural resource damages for injury to DOI trust resources (including related natural

resource damage assessment costs) at or in connection with the LDR with respect to

releases of hazardous substances from the Former Debtor-Owned/Operated Parcels listed

in Paragraph 1(f); (iii) claims by the United States, NOAA or potentially responsible

parties for natural resource damages for injury to NOAA trust resources (including

related natural resource damage assessment costs) at or in connection with the LDR with

respect to releases of hazardous substances from the Former Debtor-Owned/Operated

Parcels listed in Paragraph 1(f).

21.   Notwithstanding the preceding Paragraph 20, the "matters addressed" in this

Settlement Agreement do not include claims against any of the Debtors for past response

costs incurred by potentially responsible parties prior to the Petition Date and included in

proofs of claim filed in any of the Bankruptcy Cases by potentially responsible parties

with respect to the LDW Site.

22.   This Settlement Agreement constitutes a judicially-approved settlement

pursuant to which each Debtor and Lehigh Hanson has, as of the Effective Date, resolved

liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42

U.S.C. § 9613(f)(3)(B).

23.   Each of the Debtors and Lehigh Hanson agrees that, with respect to any suit

or claim brought against it after the Effective Date for matters related to this Settlement

Agreement, it will notify the United States in writing within ten days after service of the

complaint or claim upon it.  In addition, in connection with any such suit or claim, each

of the Debtors agrees that it will notify the United States in writing within ten days after

service or receipt of any motion for summary judgment, and within ten days after receipt

of any order from a court setting a case for trial (provided, however, that the failure to

notify the United States pursuant to this Paragraph 23 shall not in any way affect the

protections afforded under Section X (Covenants and Reservations)).

## XII.   NOTICES AND SUBMISSIONS

24.   Whenever, under the terms of this Settlement Agreement, written notice is

required to be given, or a report or other document is required to be sent by one Party to

another, it shall be directed to the individuals at the addresses specified below via U.S.

certified mail, return receipt requested, unless those individuals or their successors give

notice of a change of address to the other Parties in writing.  All notices and submissions

shall be considered effective upon receipt, unless otherwise provided.  Except as

otherwise provided in this Settlement Agreement, written notice as specified herein shall

constitute complete satisfaction of any written notice requirement in the Settlement

Agreement with respect to the United States, [the State], and the Debtors, respectively.

> As to the United States:
> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, DC 20044
> Ref. DOJ File No. 90-11-3-11737 and 90-11-3-11737/1
>
> As to NOAA:
> Jared Piagionne
> Attorney Advisor
> National Oceanic and Atmospheric Administration
> Office of the General Counsel
> Natural Resource Section
> 1315 East-West Highway
> SSMC3, Suite 15106
> Silver Spring, MD  20910

As to <u>DOI</u>:
Deirdre F. Donahue
Attorney Advisor
Department of the Interior
Office of the Solicitor
601 SW 2nd
Portland, OR  97204

As to <u>EPA</u>:
Nick Vidargas
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10
1200 6th Avenue
Seattle, WA 98101


As to <u>the Debtors</u>:
Charles E. McChesney II
Vice President & Secretary, Kaiser Gypsum Company, Inc.
Vice President & Secretary, Hanson Permanente Cement, Inc.
Chief Legal Counsel
Three Rivers Management Inc., agent for
      Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc.
600 River Ave., Suite 200
Pittsburgh, PA 15212


## XIII.    <u>JUDICIAL APPROVAL AND PUBLIC COMMENT</u>

25.   This Settlement Agreement shall be subject to approval of the Bankruptcy

Court.  The Debtors shall promptly seek approval of this Settlement Agreement under

Bankruptcy Rule 9019 or applicable provisions of the Bankruptcy Code.

26.   This Settlement Agreement shall be lodged with the Bankruptcy Court and

shall thereafter be subject to a period of public comment following publication of notice

of the Settlement Agreement in the *Federal Register*.  The public comment period

provided for in this Paragraph 26 may run concurrently with any notice period required

20

pursuant to Bankruptcy Rule 2002 or applicable local rule in connection with judicial

approval of the Settlement Agreement pursuant to the preceding Paragraph 25.

27.   After the conclusion of the public comment period, the United States will file

with the Bankruptcy Court any comments received, as well as the United States'

responses to the comments, and at that time, if appropriate, the United States will request

approval of the Settlement Agreement.  The United States reserves the right to withdraw

or withhold its consent if the comments regarding the Settlement Agreement disclose

facts or considerations which indicate that the Settlement Agreement is not in the public

interest.

28.   If for any reason (a) the Settlement Agreement is withdrawn by the United

States as provided in Paragraph 27; (b) the Settlement Agreement is not approved by the

Bankruptcy Court; or (c) the Bankruptcy Cases are dismissed or converted to cases under

Chapter 7 of the Bankruptcy Code before the effective date of a plan of reorganization,

then:  (i) this Settlement Agreement shall be null and void, and the Parties shall not be

bound hereunder or under any documents executed in connection herewith; (ii) the

Parties shall have no liability to one another arising out of or in connection with this

Settlement Agreement or under any documents executed in connection herewith; and (iii)

this Settlement Agreement and any documents prepared in connection herewith shall

have no residual or probative effect or value.

## XIV.  PLAN OF REORGANIZATION

29.   The Debtors shall not amend the Plan of Reorganization in a manner

inconsistent with the terms and provisions of this Settlement Agreement, or take any

other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of

this Settlement Agreement. The Debtors shall timely serve the Settling Federal Agencies

with any motion to amend the Plan after its confirmation. The Settling Federal Agencies

shall not oppose any term or provision of the Plan that is addressed by and consistent

with this Settlement Agreement. The Parties reserve all other rights and defenses they

may have with respect to the Plan.

## XV.  INTEGRATION, AMENDMENTS, AND COUNTERPARTS

30.  This Settlement Agreement and any other documents to be executed in

connection herewith and referred to herein shall constitute the sole and complete agreement

of the Parties with respect to the matters addressed herein.

31.  This Settlement Agreement may not be amended except by a writing signed

by all the Parties and approved by the Bankruptcy Court.

32.  This Settlement Agreement may be executed in counterparts, each of which

shall constitute an original, and all of which shall constitute one and the same agreement.

## XVI.  RETENTION OF JURISDICTION

33.  The Court (or, upon withdrawal of the Court's reference, the United States

District Court for the Western District of North Carolina) shall retain jurisdiction over the

subject matter of this Settlement Agreement and the Parties for the duration of the

performance of the terms and provisions of this Settlement Agreement for the purpose of

enabling any of the Parties to apply to the Court at any time for such further order,

direction, and relief as may be necessary or appropriate for the construction or

interpretation of this Settlement Agreement or to effectuate or enforce compliance with

its terms.

The undersigned party hereby enters into this Settlement Agreement in *In re Kaiser Gypsum Company, Inc. et al.*, Case No. 16-31602 (Bankr. W.D. N.C.).


FOR THE UNITED STATES OF AMERICA:



Date: _____     By: _____
                                       THOMAS MARIANI
                                       Chief
                                       Environmental Enforcement Section
                                       Environment and Natural Resources Division
                                       U.S. Department of Justice




Date: _____     By: _____
                                       KARL J. FINGERHOOD
                                       (PA Bar ID No. 63260)
                                       Senior Counsel
                                       Environmental Enforcement Section
                                       Environment and Natural Resources Division
                                       U.S. Department of Justice
                                       P.O. Box 7611
                                       Washington, DC 20044
                                         Tel: 202-514-7519
                                         E-mail: karl.fingerhood@usdoj.gov

The undersigned party hereby enters into this Settlement Agreement in *In re Kaiser Gypsum Company, Inc. et al.*, Case No. 16-31602 (Bankr. W.D. N.C.).


FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date: _____     By: _____
SHERYL BILBREY
Director,
Superfund and Emergency Management
   Division
U.S. Environmental Protection Agency
Region 10



Date: _____     By: _____
NICK VIDARGAS
(WA Bar ID No. 47186)
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10
1200 6th Avenue
Seattle, WA 98101

The undersigned parties hereby enter into this Settlement Agreement in *In re Kaiser Gypsum Company, Inc. et al.*, Case No. 16-31602 (Bankr. W.D. N.C.).

FOR KAISER GYPSUM COMPANY, INC.:

Date: *May 30, 2019*                    By: _____

Name: *Charles E. McChesney II*

Title: *Vice President & Secretary*

FOR HANSON PERMANENTE CEMENT, INC.:

Date: *May 30, 2019*                    By: _____

Name: *Charles E. McChesney II*

Title: *Vice President & Secretary*

FOR LEHIGH HANSON, INC.

Date:_____          By: _____

Name: _____

Title: _____

The undersigned parties hereby enter into this Settlement Agreement in *In re Kaiser Gypsum Company, Inc. et al.*, Case No. 16-31602 (Bankr. W.D. N.C.).

FOR KAISER GYPSUM COMPANY, INC.:

Date: _____      By: _____
                             Name: _____
                             Title: _____

FOR HANSON PERMANENTE CEMENT, INC.:

Date: _____      By: _____
                             Name: _____
                             Title: _____

FOR LEHIGH HANSON, INC.

Date: *May 30, 2019*         By: *Carol L. Lowry*
                             Name: *Carol L. Lowry*
                             Title: *Vice President + General Counsel*

**Index of Exhibits**

**Exhibit**                    **Description**

A    5906 West Marginal Way, S.W., Seattle, WA (Map and Legal
Description); S 58.08 FT OF NE 1/4 OF SW 1/4 & OF GL 7 LY ELY OF
W MARGINAL WAY & N 704.88 FT OF SE 1/4 OF SW 1/4 & OF GL 6
& OF SE 1/4 LY ELY OF W MARGINAL WAY & W LY OF
WATERWAY LESS BEG 1303.09 FT S OF CTR OF SEC TH N 89-42-
22 W 181.22 FT TH N 10-25-07 W 41.98 FT TH S 89-42-22 E 188.52 FT
TH N 89-31-51 E 897.42 FT TH S 19-35-39 E 207.47 FT TH S 89-31-51
W 180.39 FT TH N 00-28-09 W 154.78 FT TH S 89-31-51 W 785.01 FT
TO POB LESS S 27.52 FT AS MEAS ALG ELY LN
THOF Corresponding to the border of King County tax parcel
1924049029, as of February 2, 2019.

B    5975 East Marginal Way, S., Seattle, WA (Map and Legal Description);
PCL A SE LBA #9701264 REC # 9706189008 SD LBA BNG IN POR GL 4 STR
19-24-04 TGW POR GL5 STR 30-24-04 LY ELY OF DUWAMISH RIVER &
WLY OF E MARGINAL WY S & LOTS 1 THRU 9 BLK 3 MCGLAUGHLINS
WATER FRONT ADD Corresponding to the border of King County tax parcel
1924049075, as of February 2, 2019.

C    5931 East Marginal Way, S., Seattle, WA (Map and Legal Description);
PCL B SE LBA #9700280 REC # 9705089001 SD BLA BNG IN POR GL 4 STR
19-24-04 TGW POR GL 5 STR 30-24-04 LY ELY OF DUWAMISH RIVER &
WLY OF E MARGINAL WY S Corresponding to the border of King County tax
parcel 1924049092, as of February 2, 2019.

D    6335 First Ave., S., Seattle, WA (Map and Legal Description);
MC LAUGHLINS WATER FRONT ADD PCL B SE LBA #9701264 REC #
9706189008 SD LBA BNG IN POR GL 4 STR 19-24-4 TGW SD LOTS & POR
GL 5 STR 30-24-4 Corresponding to the border of King County tax parcel
5367204505, as of February 2, 2019.

E    3801 East Marginal Way, Seattle, WA (Current Location of Ash Grove
Cement Facility – Map and Legal Description); SEATTLE TIDE LDS EXT # 1
PCL B SEATTLE LBA #3011050 REC# 20150423900001 SD LBA BEING
POR BLKS 378 & 385 & 387 SD PLAT TGW LOTS 1-2 & 47-48 & POR LOTS
3 & 4 & 46 BLK 388 SEATTLE TIDE LDS REPLAT TGW POR GL #3 SEC
18-24-04 LY N OF N LN OF DAKOTA ST EXTENDED WLY & POR VAC W
DAKOTA ST ADJ THOF TGW POR ADJ POR SD BLK 387 LY WITHIN E
WATERWAY TGW VAC STS ADJ Corresponding to the border of King County
tax parcel 7666700350, as of February 2, 2019.

## EXHIBIT C

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | Case No. 16-31602 (JCW) |
| Debtors. | (Jointly Administered) |

## ORDER APPROVING SETTLEMENT WITH THE UNITED STATES

This matter coming before the Court on the Debtors' Motion for an Order

Approving Settlement with the United States (the "Motion"),[2] filed by the above-captioned

debtors (together, the "Debtors"); the Settlement Agreement having been published in the

Federal Register; the Court having reviewed the Motion; and the Court having found that (i) the

Court has jurisdiction over this matter pursuant to 28 U.S.C.§§ 157 and 1334, (ii) venue is proper

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement,
Inc. (7313).  The Debtors' address is 300 E John Carpenter Freeway, Irving, Texas 75062.

[2]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to

28 U.S.C. § 157(b), (iv) notice of the Motion was sufficient under the circumstances and (v) the

Settlement was negotiated at arm's length and in good faith; and the Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates and

creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    The Settlement Agreement and the Settlement therein are approved.

3.    The Debtors are authorized to perform their obligations under the

Settlement Agreement.

4.    The Debtors' noticing and claims agent, Prime Clerk LLC, is hereby

authorized and directed to take and perform all actions necessary to implement and effectuate the

relief granted in this Order.

**This Order has been signed electronically.**          **United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the order.**

-2-

NAI-1506609906v7