# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.,*[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## DEBTORS' MOTION FOR AN ORDER APPROVING
## SETTLEMENT WITH ASH GROVE CEMENT COMPANY

Kaiser Gypsum Company, Inc. ("Kaiser Gypsum") and Hanson Permanente

Cement, Inc. ("HPCI"), debtors in the above-captioned cases (together, the "Debtors"), move the

Court for entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), approving a settlement between Ash Grove Cement Company ("Ash

Grove") and the Debtors resolving disputes related to that certain five mile stretch designated by

the United States Environmental Protection Agency (the "EPA") as the Lower Duwamish

Waterway Superfund Site (the "Site").  In support of this motion, the Debtors submit the

Declaration of Charles E. McChesney II, attached hereto as Exhibit A, and respectfully represent

as follows:

### Background

1.      On September 30, 2016, each of the Debtors commenced a reorganization

case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The

Debtors are continuing in possession of their properties and are managing their businesses, as

---

[1]      The Debtors are the following entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement,
Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

2.      On October 14, 2016, the Court entered an order appointing an official

committee of unsecured creditors (the "<u>Creditors' Committee</u>") in these chapter 11 cases

[D.I. 84].  On October 19, 2016, the Court entered orders appointing (a) an official committee of

asbestos personal injury claimants (the "<u>Asbestos Committee</u>") [D.I. 100] and (b) a legal

representative for future asbestos claimants (the "<u>Future Claimants' Representative</u>") [D.I. 99].

3.      Debtor HPCI is a wholly-owned, indirect subsidiary of non-debtor Lehigh

Hanson, Inc.  HPCI is the direct parent of Debtor Kaiser Gypsum and certain additional domestic

non-debtor subsidiaries.  The ultimate parent of the Debtors and Lehigh Hanson, Inc. is

non-debtor HeidelbergCement AG, a German company.

## Background on the Site

4.      Each Debtor owned and operated facilities in the Seattle area at various

times between 1927 and 1987.  All of the facilities were on or adjacent to the Site, an industrial

waterway located in Seattle, Washington.  For 29 months between 1947 and 1949, a predecessor

of HPCI (referred to together with HPCI as "<u>HPCI</u>") leased and operated a cement

manufacturing plant located at 3801 East Marginal Way, Seattle, Washington (the "<u>Seattle</u>

<u>Plant</u>"), a property that is today owned by Ash Grove.  From 1944 to 1987, HPCI owned and

operated a bulk cement receiving, storage and distribution facility at 5975 East Marginal Way,

Seattle, Washington.  Additionally, from 1965 to 1987, HPCI leased and then owned property at

5906 West Marginal Way SW, Seattle, Washington, where HPCI operated a second bulk cement

receiving, storage and distribution facility.

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to
28 U.S.C. § 1409.

5.      In 1927 and 1928, Kaiser Gypsum procured the land for and constructed a cement manufacturing facility at 3801 East Marginal Way, which Kaiser Gypsum then operated for 31 months before leasing the facility to other operators and selling the facility in 1949.  In 1952 and 1953, Kaiser Gypsum procured the land for and constructed a gypsum products manufacturing facility at 5931 East Marginal Way, Seattle, Washington, which Kaiser Gypsum owned and operated from 1954 until the facility was sold in 1978.  Additionally, from 1969 to 1976, Kaiser Gypsum leased the land and operated a gypsum accessories manufacturing facility at 6335 First Avenue South, Seattle, Washington.

6.      By 1978, Kaiser Gypsum had sold all of its operations in the Seattle area, and by 1987, HPCI had ceased operations or sold all of its facilities in the Seattle area.

7.      The Site involves over 100 potentially responsible parties ("PRPs"), including Ash Grove and the Debtors.  In February 2010, the EPA served each of the Debtors with a request for information pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9604(e) ("CERCLA"), and each of the Debtors responded to that request with an initial response in June 2010 and a supplemental response the following year, in December 2011.

8.      King County, Washington, The Boeing Company, the Port of Seattle and the City of Seattle (collectively, the "LDW Claimants"), all of which are also PRPs at the Site, completed a remedial investigation and feasibility study ("RI/FS") of the Site pursuant to the requirements of a joint Administrative Order on Consent to Conduct a RI/FS between the LDW Claimants, the Washington Department of Ecology and the EPA.  The LDW Claimants also engaged in cleanup of various "early action areas" identified as locations that would require cleanup under any remedial scenario.  In 2013, the LDW Claimants also agreed to perform

additional studies of the Site, which remain ongoing.

9.     In April 2014, HPCI, for itself and for Kaiser Gypsum, entered into an
Alternative Dispute Resolution Memorandum of Agreement (the "MOA") with over thirty
participating parties, including Ash Grove, pursuant to which the MOA signatories agreed to a
process for allocating the response costs incurred in connection with investigation and
remediation of the Site.  In November 2014, the EPA released a Record of Decision ("ROD")
that prescribes a cleanup plan for the Site and currently, is working with the LDW Claimants to
complete certain additional investigations in advance of implementing the remediation called for
in the ROD.  In addition to the EPA, the Washington Department of Ecology is also active with
the Site.

### Proofs of Claim Related to the Site

10.     On March 31, 2017, the United States, at the request of the EPA and the
United States Department of Interior, acting through the U.S. Fish and Wildlife Service
(the "DOI"), and the United States Department of Commerce, acting through the National
Oceanic and Atmospheric Administration (the "NOAA"), each filed identical proofs of claim
against each Debtor based on alleged CERCLA liability in connection with the Site.  See Proofs
of Claim Nos. 6, 7, 8, 9, 10 and 11.  Each claim asserts that the Debtor is responsible for some
undetermined portion of (a) no less than $6,474,217.49 in past response costs and natural
resource damages, including assessment costs, incurred by the United States and (b) future
response costs and natural resource damages, including future natural resource damage
assessment costs, to be incurred by the United States.

11.     On September 12, 2017, Ash Grove filed a proof of claim against each
Debtor (Proofs of Claim Nos. 29 and 49) in an unliquidated amount (together, the "Claims").

Each of the Claims asserts that the applicable Debtor is responsible for some portion of (a) no less than $34,473.67 in investigation and response costs allegedly incurred by Ash Grove to address environmental conditions at the Seattle Plant or the Site and (b) undetermined future investigation, cleanup, source control, remediation and response costs, as well as undetermined natural resource damages relating to the Seattle Plant or the Site that have not yet been incurred by Ash Grove.

12.     On October 12, 2017, Ash Grove filed three proofs of claim against Kaiser Gypsum (proof of claim numbers 648, 649 and 651) on behalf of the United States through the EPA, the DOI and the NOAA and three proofs of claim against HPCI (proof of claim numbers 650, 652 and 653) on behalf of the United States through the EPA, the DOI and the NOAA (collectively, said six proofs of claim, the "Ash Grove 501(b) Proofs of Claim"), pursuant to section 501(b) of the Bankruptcy Code asserting that the Debtors are liable, under section 107 of CERCLA, for costs incurred and to be incurred by the United States in response to releases and threats of releases of hazardous substances, and natural resource damages and costs of natural resource damage assessment, at or in connection with the Site and, in addition, at or in connection with the Seattle Plant.

13.     In addition to Ash Grove, each of the LDW Claimants filed proofs of claim against the Debtors.  See The Boeing Company's proofs of claim (Proofs of Claim Nos. 68, 281, 447 and 645); the Port of Seattle's proofs of claim (Proofs of Claim Nos. 23 and 24); the City of Seattle's proofs of claim (Proofs of Claim Nos. 28 and 33); King County, Washington's proofs of claim (Proofs of Claim Nos. 71 and 88).  The Bankruptcy Court has entered orders approving settlements among the Debtors and each of the LDW Claimants, resolving such claimants' claims.  See Order Approving Settlement With the Boeing Company [D.I. 1601];

Order Approving Settlement With the City of Seattle [D.I. 1602]; Order Approving Settlement

With the Port of Seattle [D.I. 1603]; and Order Approving Settlement With King County,

Washington [D.I. 1604]. The Bankruptcy Court has also entered an order approving a settlement

among the Debtors and the United States (the "US Settlement") resolving the United States'

claims with respect to the Site, including without limitation the Ash Grove 501(b) Proofs of

Claim [D.I. 1789].

## **Proposed Settlement**

14.     Following extensive arm's-length negotiations, the Debtors and Ash Grove

(collectively, the "Parties") have agreed to resolve the Claims. The Debtors and Ash Grove have

memorialized their agreement in the settlement agreement attached hereto as Exhibit B

(the "Settlement Agreement"). The Settlement Agreement contains the following terms, among

others (the "Settlement"):[3]

> a.     Proof of claim number 29 will be allowed as a general unsecured
> claim in the amount of $8,618.42 against Kaiser Gypsum in its bankruptcy case.

> b.     Proof of claim number 49 will be allowed as a general unsecured
> claim in the amount of $8,618.42 against HPCI in its bankruptcy case.

> c.     Ash Grove agrees that the US Settlement fully and completely
> resolves the Ash Grove 501(b) Proofs of Claim.

> d.     The Claims shall not be allowed as set forth above until each of the
> following conditions is satisfied: (i) the entry of a consent decree and/or
> settlement agreement concerning the Debtors' liabilities at the Site pursuant to the
> terms of the US Settlement and (ii) the occurrence of the effective date of a plan
> of reorganization confirmed in the Debtors' chapter 11 cases (the "Plan Effective
> Date") that provides for payment in full in cash, without interest, of the allowed
> amount of the Claims.

Additionally, the Parties have agreed to certain other terms and conditions, each set forth in the

---

[3]     Capitalized terms not otherwise defined in this paragraph shall have the meanings given to them in the
Settlement Agreement.

Settlement Agreement.

### Basis for Relief Requested

15.      This Court has authority to approve the Settlement pursuant to Bankruptcy

Rule 9019.  Key3Media Grp., Inc. v. Puliver.com Inc. (In re Key3Media Grp., Inc.), 336 B.R. 87,

92 (Bankr. D. Del. 2005).  Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  Compromises, such as the resolution of the Claims set forth in the

Settlement, "are favored in bankruptcy" because they "minimize litigation and expedite the

administration of a bankruptcy case."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir.

1996) (citation omitted); see also In re Southern Hosiery Mill, Inc., 2012 Bankr. LEXIS 802, at

*3 (Bankr. W.D.N.C. 2012) ("It is well established that compromises are favored in

bankruptcy.").

16.      In evaluating the proposed Settlement, a court "need conduct neither an

exhaustive investigation into the validity of, nor a mini-trial on, the merits of the claims sought to

be compromised."  In re Southern Hosiery Mill, Inc., 2012 Bankr. LEXIS at *3-4.  Rather, a

court should merely examine "if the compromise is fair, reasonable, and in the best interest of the

estate."  In re Louise's Inc., 211 B.R. 798, 801 (Bankr. D. Del. 1997); see In re Marvel Entm't

Grp., Inc., 222 B.R. 243, 250 (D. Del. 1998) (concluding that the proposed settlement was in the

best interest of the estate).  The "best interest" test requires that the proposed settlement be "fair

and equitable."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson, 390 U.S. 414, 424 (1968) (analyzing settlement of claims under the Bankruptcy Act);

In re Martin, 91 F.3d at 393; Key3Media Grp., 336 B.R. at 92.  In evaluating the fairness of a

settlement, a court does not have to be convinced that the settlement is the best possible

compromise, but only that the settlement "falls within the reasonable range of litigation

possibilities." In re Washington Mut., Inc., 442 B.R. 314, 328 (Bankr. D. Del. 2011); In re

Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004); see also In re Worldcom,

Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (finding the bankruptcy court "need only

'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of

reasonableness'" (quoting In re Teltronics Serv., Inc., 762 F.2d 185, 189 (2d Cir. 1985))).

17.     This Court has identified four factors that courts should consider in

determining whether a settlement falls within the lowest point in the range of reasonableness:

(a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the

complexity of the litigation involved, and the expense, inconvenience and the delay necessarily

attending it; and (d) the paramount interest of the creditors.  In re Southern Hosiery Mill, Inc.,

2012 Bankr. LEXIS at *4 (citing In re Martin, 91 F.3d at 393).

***Application of the Relevant Standards***

18.     The Debtors' entry into the Settlement is a sound exercise of their business

judgment and in the best interests of their estates and creditors.  The Settlement is the result of

arm's-length bargaining between the Debtors and Ash Grove, and it provides for a beneficial and

fair resolution of the disputes between the Parties.

19.     The Debtors believe they have viable arguments regarding the extent of

their liability at the Seattle Plant and the Site and, therefore, the amount of the claims that may be

recoverable from the Debtors.  However, based on their review of information provided by Ash

Grove and other parties, as well as information the Debtors have independently developed, the

Debtors believe that the proposed allowed amounts of the Claims establish their liability to Ash

Grove in an amount that is fair and reasonable under the circumstances, and accordingly, the

Debtors do not anticipate they would obtain a materially more favorable result in litigation.

20.     Additionally, the Debtors have been negotiating and working with the

United States and the LDW Claimants regarding environmental liabilities at the Site for years. Given the Debtors' long history at the Site, the settlements achieved with the LDW Claimants and the United States and in light of the asserted amount of the Claims, engaging in further negotiations or litigation of the Claims would be unnecessarily costly, inconvenient and unlikely to result in a better outcome for the Debtors.

21.     Accordingly, the Debtors respectfully submit that the Settlement (a) is fair and reasonable, (b) is in the best interests of their chapter 11 estates and creditors and (c) should be approved pursuant to Bankruptcy Rule 9019.

## Notice

22.     Notice of this motion has been provided to:  (a) the Bankruptcy Administrator; (b) counsel to the Asbestos Committee; (c) Lehigh Hanson, Inc.; (d) counsel to the Creditors' Committee; (e) counsel to the Future Claimants' Representative; (f) counsel to Ash Grove; (g) the EPA; and (h) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

23.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, granting:  (i) the relief requested herein; and (ii) such other and further relief as the Court may deem proper.

Dated:    October 25, 2019
       (Charlotte, NC)

Respectfully submitted,

 /s/ John R. Miller, Jr. 
C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
1200 Carillon
227 West Trade Street
Charlotte, North Carolina  28202
Telephone:  (704) 334-0891
Facsimile:  (704) 377-1897
E-mail:   rrayburn@rcdlaw.net
         jmiller@rcdlaw.net

-and-

Gregory M. Gordon (TX 08435300)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
        asrush@jonesday.com

-and-

Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
E-mail: pmgreen@jonesday.com

ATTORNEYS FOR DEBTORS

## Exhibit A

**Declaration of Charles E. McChesney II**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | : | Case No. 16-31602 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**DECLARATION OF CHARLES E. MCCHESNEY II**
**IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER**
**APPROVING SETTLEMENT WITH ASH GROVE CEMENT COMPANY**

1.      I am a Vice President, the Secretary and a Director of both Kaiser Gypsum

Company, Inc. ("Kaiser Gypsum") and Hanson Permanente Cement, Inc. ("HPCI"), which are

debtors in the above-captioned chapter 11 cases (together, the "Debtors").  I have held these

positions with the Debtors since October 1, 2010.

2.      I am also a Vice President, the Secretary, the Chief Legal Counsel and a

Director of Three Rivers Management, Inc. ("TRMI"), an affiliate of the Debtors, and have

served in those capacities since October 1, 2010.  Prior to that time, I was an Assistant Secretary

of TRMI and have been an employee of TRMI since May 2005.  Pursuant to a contract with the

Debtors, TRMI provides asbestos and environmental liability management services for, and acts

as agent on behalf of, each of the Debtors.

3.      I submit this declaration in support of the Debtors' Motion for an Order

Approving Settlement with Ash Grove Cement Company (the "Motion").[2]  All facts set forth in

---

[1]       The Debtors are the following entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement,
Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

[2]       Capitalized terms not otherwise defined in this declaration have the meanings given to them in the Motion.

this declaration are based upon my personal knowledge, my review of relevant documents and/or information supplied to me by other members of the Debtors' management or the Debtors' professionals.  If called upon to testify, I could and would testify competently to the facts set forth herein.

### **Background on the Site**

4.    Each Debtor owned and operated facilities in the Seattle area at various times between 1927 and 1987.  All of the facilities were on or adjacent to the Site, an industrial waterway located in Seattle, Washington.  For 29 months between 1947 and 1949, a predecessor of HPCI (referred to collectively with HPCI as "HPCI") leased and operated a cement manufacturing plant located at 3801 East Marginal Way, Seattle, Washington (the "Seattle Plant"), a property that is today owned by Ash Grove.  From 1944 to 1987, HPCI owned and operated a bulk cement receiving, storage and distribution facility at 5975 East Marginal Way, Seattle, Washington.  Additionally, from 1965 to 1987, HPCI leased and then owned property at 5906 West Marginal Way SW, Seattle, Washington, where HPCI operated a second bulk cement receiving, storage and distribution facility.

5.    In 1927 and 1928, Kaiser Gypsum procured the land for and constructed a cement manufacturing facility at 3801 East Marginal Way, which Kaiser Gypsum then operated for 31 months before leasing the facility to other operators and selling the facility in 1949.  In 1952 and 1953, Kaiser Gypsum procured the land for and constructed a gypsum products manufacturing facility at 5931 East Marginal Way, Seattle, Washington, which Kaiser Gypsum owned and operated from 1954 until the facility was sold in 1978.  Additionally, from 1969 to 1976, Kaiser Gypsum leased the land and operated a gypsum accessories manufacturing facility at 6335 First Avenue South, Seattle, Washington.

6.      By 1978, Kaiser Gypsum had sold all of its operations in the Seattle area, and by 1987, HPCI had ceased operations or sold all of its facilities in the Seattle area.

7.      I understand that the Site involves over 100 PRPs, including Ash Grove and the Debtors.  In February 2010, the EPA served each of the Debtors with a request for information pursuant to Section 104(e) of <u>CERCLA</u>, and each of the Debtors responded to that request with an initial response in June 2010 and a supplemental response the following year, in December 2011.

8.      I understand that the LDW Claimants completed a RI/FS of the Site pursuant to the requirements of a joint Administrative Order on Consent to Conduct a RI/FS between the LDW Claimants, the Washington Department of Ecology and the EPA.  The LDW Claimants also engaged in cleanup of various "early action areas" identified as locations that would require cleanup under any remedial scenario.  In 2013, the LDW Claimants also agreed to perform additional studies of the Site, which remain ongoing.

9.      In April 2014, HPCI, for itself and for Kaiser Gypsum, entered into a MOA with over thirty participating parties, including Ash Grove, pursuant to which the MOA signatories agreed to a process for allocating the response costs incurred in connection with investigation and remediation of the Site.  In November 2014, the EPA released a ROD that prescribes a cleanup plan for the Site and currently, is working with the LDW Claimants to complete certain additional investigations in advance of implementing the remediation called for in the ROD.  In addition to the EPA, the Washington Department of Ecology is also active with the Site.

<u>**Proofs of Claim Related to the Site**</u>

10.      It is my understanding that on September 12, 2017, Ash Grove filed a

proof of claim against each Debtor (Proofs of Claim Nos. 29 and 49) in an unliquidated amount
(together, the "Claims").  Each of the Claims asserts that the applicable Debtor is responsible for
some portion of (a) no less than $34,473.67 in investigation and response costs allegedly
incurred by Ash Grove to address environmental conditions at the Seattle Plant or the Site and
(b) undetermined future investigation, cleanup, source control, remediation and response costs,
as well as undetermined natural resource damages relating to the Seattle Plant or the Site that
have not yet been incurred by Ash Grove.

        11.    I understand that on October 12, 2017, Ash Grove filed three proofs of
claim against Kaiser Gypsum (proof of claim numbers 648, 649 and 651) on behalf of the United
States through the EPA, the DOI and the NOAA and three proofs of claim against HPCI (proof
of claim numbers 650, 652 and 653) on behalf of the United States through the EPA, the DOI
and the NOAA (collectively, said six proofs of claim, the "Ash Grove 501(b) Proofs of Claim"),
pursuant to section 501(b) of the Bankruptcy Code asserting that the Debtors are liable, under
section 107 of CERCLA, for costs incurred and to be incurred by the United States in response to
releases and threats of releases of hazardous substances, and natural resource damages and costs
of natural resource damage assessment, at or in connection with the Site and, in addition, at or in
connection with the Seattle Plant.

        12.    I understand that in addition to Ash Grove, each of the LDW Claimants
filed proofs of claim against the Debtors.  See The Boeing Company's proofs of claim (Proofs of
Claim Nos. 68, 281, 447 and 645); the Port of Seattle's proofs of claim (Proofs of Claim Nos. 23
and 24); the City of Seattle's proofs of claim (Proofs of Claim Nos. 28 and 33); the King County,
Washington's proofs of claim (Proofs of Claim Nos. 71 and 88).  The United States also filed
claims against each of the Debtors related to the Site.  See Proofs of Claim Nos. 6, 7, 8, 9, 10 and

11.

13.     I further understand that the Bankruptcy Court has entered orders approving settlements among the Debtors and each of the LDW Claimants, resolving such claimants' claims.  See Order Approving Settlement With the Boeing Company [D.I. 1601]; Order Approving Settlement With the City of Seattle [D.I. 1602]; Order Approving Settlement With the Port of Seattle [D.I. 1603]; and Order Approving Settlement With King County, Washington [D.I. 1604].  The Bankruptcy Court has also entered an order approving a settlement among the Debtors and the United States (the "US Settlement") resolving the United States' claims with respect to the Site, including without limitation the Ash Grove 501(b) Proofs of Claim [D.I. 1789].

## **Proposed Settlement**

14.     I believe that the Debtors' entry into the Settlement is a sound exercise of their business judgment and in the best interests of their estates and creditors.  The Settlement is the result of arm's-length bargaining between the Debtors and Ash Grove, and it provides for a beneficial and fair resolution of the disputes between the Parties.

15.     I believe that the Debtors have viable arguments regarding the extent of their liability at the Seattle Plant and the Site and, therefore, the amount of the claims that may be recoverable from the Debtors.  However, based on review of information provided by Ash Grove and other parties, as well as information the Debtors have independently developed, I believe that the proposed allowed amounts of the Claims establish the Debtors' liability to Ash Grove in an amount that is fair and reasonable under the circumstances, and accordingly, I do not anticipate that the Debtors would obtain a materially more favorable result in litigation.

16.     Additionally, the Debtors have been negotiating and working with the

United States and the LDW Claimants regarding environmental liabilities at the Site for years.  I believe that given the Debtors' long history at the Site, the settlements achieved with the LDW Claimants and the United States and in light of the asserted amount of the Claims, engaging in further negotiations or litigation of the Claims would be unnecessarily costly, inconvenient and unlikely to result in a better outcome for the Debtors.

17.     Accordingly, I believe that the Settlement is fair and reasonable and is in the best interests of the chapter 11 estates and creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  October 25, 2019

 /s/ Charles E. McChesney II
Charles E. McChesney II

## EXHIBIT B

**Settlement Agreement**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| KAISER GYPSUM COMPANY, INC., *et al.,*[1] | : | Case No. 16-31602 (JCW) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

SETTLEMENT AGREEMENT REGARDING
ASH GROVE CEMENT COMPANY'S GENERAL UNSECURED CLAIMS

RECITALS

A.     On September 30, 2016, Kaiser Gypsum Company, Inc. ("Kaiser Gypsum") and Hanson Permanente Cement, Inc. ("HPCI" and together with Kaiser Gypsum, the "Debtors"), commenced reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court").

B.     On March 31, 2017, the United States, at the request of the United States Environmental Protection Agency (the "EPA") and the United States Department of Interior, acting through the U.S. Fish and Wildlife Service (the "DOI"), and the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration (the "NOAA"), each filed identical proofs of claim (proof of claim numbers 6, 7, 8, 9, 10 and 11, the "U.S. Proofs of Claim") against each Debtor based on alleged liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in connection with the Lower Duwamish Waterway Superfund Site (the "Site"). These claims are based on Section 107 of CERCLA, 42 U.S.C. § 9607, and seek recovery from the Debtors for:  (a) a portion of unreimbursed past response costs incurred by the EPA in the amount of $5,690,299.30; (b) a portion of future response costs based on a Record of Decision released by the EPA in November 2014 that selects the CERCLA remedy for the Site, which the EPA estimates will result in remedial costs of $342 million; and (c) a portion of Site natural resource damages, including past and future assessment costs.  The Debtors are but two of the approximately 120 potentially responsible parties ("PRPs") that the EPA has identified at the Site.

C.     On October 12, 2017, Ash Grove Cement Company (the "Claimant" and collectively with the Debtors, the "Parties"), another PRP at the Site, filed three proofs of claim against Kaiser Gypsum (proof of claim numbers 648, 649 and 651) on behalf of the

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

United States through EPA, DOI and NOAA and three proofs of claim against HPCI (proof of claim numbers 650, 652 and 653) on behalf of the United States through EPA, DOI and NOAA (collectively, said six proofs of claim, the "Ash Grove 501(b) Proofs of Claim"), pursuant to Section 501(b) of the Bankruptcy Code, 11 U.S.C. § 501(b), asserting that the Debtors are liable, under Section 107 of CERCLA, for costs incurred and to be incurred by the United States in response to releases and threats of releases of hazardous substances, and natural resource damages and costs of natural resource damage assessment, at or in connection with the Site and, in addition, at or in connection with a cement manufacturing plant located at 3801 East Marginal Way in Seattle, Washington (the "Seattle Plant") which is owned by the Claimant and is located within the Site.

D.    On September 12, 2017, the Claimant filed proof of claim number 29 against Kaiser Gypsum ("Claim No. 29") and proof of claim number 49 against HPCI ("Claim No. 49" and together with Claim No. 29, the "Claims"). Each of the Claims asserts that the applicable Debtor is responsible to the Claimant, under CERCLA, the Washington Model Toxics Control Act, RCW 70.105D.010, et seq. ("MTCA") and/or common law, for some portion of (i) no less than $34,473.67 in investigation and response costs allegedly incurred by the Claimant with respect to environmental conditions associated with the Seattle Plant or with the Site and (ii) undetermined future investigation, cleanup, source control, remediation and response costs, as well as undetermined natural resource damages relating to the Seattle Plant or the Site that have not yet been incurred by the Claimant

E.    In April 2014, HPCI, for itself and for Kaiser Gypsum, entered into an Alternative Dispute Resolution Memorandum of Agreement (the "MOA") with over thirty participating parties, pursuant to which the MOA signatories, including the Claimant, agreed to participate in a non-judicial process for allocating the response costs incurred in connection with investigation and remediation of the Site.

F.    The Debtors have reached an agreement with the United States, on behalf of the EPA, DOI and NOAA, to liquidate and pay in full allowed general unsecured claims in certain amounts (the "US Settlement"), in order to resolve the U.S. Proofs of Claim and the Ash Grove 501(b) Proofs of Claim.

G.    The Parties engaged in extensive good faith negotiations regarding the Claims. As a result of the Parties' arm's-length negotiations, the Parties have agreed to resolve their differences as follows.

**NOW, THEREFORE**, in consideration of the mutual promises and terms contained herein, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties hereto, the Parties, intending to be legally bound, agree as follows:

1.    **Allowance of Claims**.

a.    Proof of Claim No. 29. Subject to the satisfaction of the conditions set forth in Section 1.c., Proof of Claim No. 29 is hereby allowed as a general unsecured claim in the amount of $8,618.42 against Kaiser Gypsum in its bankruptcy case.

2

b.      <u>Proof of Claim No. 49</u>.  Subject to the satisfaction of the conditions set forth in Section 1.c., Proof of Claim No. 49 is hereby allowed as a general unsecured claim in the amount of $8,618.42 against HPCI in its bankruptcy case.

c.      <u>Ash Grove 501(b) Proofs of Claims</u>.  Claimant agrees that the US Settlement fully and completely resolves the Ash Grove 501(b) Proofs of Claim.

d.      <u>Conditions to Allowance of Claims</u>.  The Claims shall not be allowed pursuant to Sections 1.a. and 1.b. until each of the following conditions is satisfied: (i) the entry of a consent decree and/or settlement agreement concerning the Debtors' liabilities at the Site and/or the Seattle Plant pursuant to the terms of the US Settlement, and (ii) the occurrence of the effective date of a plan of reorganization confirmed in the Debtors' chapter 11 cases (the "<u>Plan Effective Date</u>") that provides for payment in full in cash, without interest, of the allowed amount of the Claims stated in Sections 1.a and 1.b above.

2.      **Effectiveness of the Settlement Agreement**.  This Settlement Agreement shall be effective (the "<u>Effective Date</u>") upon the later of (a) the date that the Settlement Agreement is signed by all Parties (the "<u>Execution Date</u>") and (b) its approval by the Bankruptcy Court.

3.      **Court Approval**.  On or before seven business days after the Execution Date, the Debtors will file a motion seeking entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving this Settlement Agreement with the Bankruptcy Court.

4.      **Law; Jurisdiction**.  This Settlement Agreement shall be governed by and construed according to the laws of the State of North Carolina.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction, and the parties hereby submit to such jurisdiction, of any dispute arising under or related to this Settlement Agreement.

5.      **Representations**.  Each of the Parties, in order to induce each other to enter into this Settlement Agreement, hereby covenants, represents and warrants to each other with the intent and understanding that the other Parties are expressly relying thereon as a material inducement to enter into this Settlement Agreement as follows:  (a) each Party has full rights, powers and authority to execute this Settlement Agreement; and (b) upon the Effective Date, this Settlement Agreement will be a valid, binding, subsisting and enforceable obligation of such Party.

6.      **Miscellaneous Provisions**.

a.      <u>Construction of Terms</u>.  This Settlement Agreement has been drafted jointly by the Parties in full consultation with their respective attorneys, and no ambiguity in this Settlement Agreement shall be interpreted or construed against any of the Parties on the basis that such Party was the drafter.

b.      <u>Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof and is the final and complete expression of their intent.  No prior or contemporaneous negotiations, promises,

agreements, covenants or representations of any kind or nature, whether made orally or in writing, have been made by the Parties, or any of them, in negotiations leading to this Settlement Agreement or relating to the subject matter hereof, which are not expressly stated herein, or which have not become merged and finally integrated into this Settlement Agreement.

        c.     <u>Modification</u>.  This Settlement Agreement can only be changed, modified or discharged if consented to in writing and executed by the Parties hereto.

        d.     <u>Binding Effect</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors or assigns.

        e.     <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

[Signature Page Follows]

4

**IN WITNESS WHEREOF**, the undersigned have duly executed and delivered this Agreement as of the date set forth below.

ASH GROVE CEMENT COMPANY

Dated:_____        _____

By:_____

Title :_____

KAISER GYPSUM COMPANY, INC.

Dated:_____        _____

By:_____

Title:_____

HANSON PERMANENTE CEMENT, INC.

Dated:_____        _____

By:_____

Title:_____

5

## **EXHIBIT C**

### **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | Case No. 16-31602 (JCW) |
| Debtors. | (Jointly Administered) |

## ORDER APPROVING SETTLEMENT WITH ASH GROVE CEMENT COMPANY

This matter coming before the Court on the Debtors' Motion for an Order

Approving Settlement with Ash Grove Cement Company (the "Motion"),[2] filed by the

above-captioned debtors (together, the "Debtors"); the Court having reviewed the Motion; and

the Court having found that (i) the Court has jurisdiction over this matter pursuant to

28 U.S.C.§§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

---

[1]     The Debtors are the following entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses): Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement,
Inc. (7313).  The Debtors' address is 300 E John Carpenter Freeway, Irving, Texas 75062.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion was

sufficient under the circumstances and (v) the Settlement was negotiated at arm's length and in

good faith; and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates and creditors; and good and sufficient cause having been

shown;

　　　　　　IT IS HEREBY ORDERED THAT:

　　　　　　1.　　　The Motion is GRANTED.

　　　　　　2.　　　The Settlement Agreement and the Settlement therein are approved.

　　　　　　3.　　　The Debtors are authorized to perform their obligations under the

Settlement Agreement.

　　　　　　4.　　　The Debtors' noticing and claims agent, Prime Clerk LLC, is hereby

authorized and directed to take and perform all actions necessary to implement and effectuate the

relief granted in this Order.


**This Order has been signed electronically.**　　　**United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the order.**