



J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| KAISER GYPSUM COMPANY, INC., *et al.*,[1] | : | Case No. 16-31602 (JCW) |
| Debtors. | : | (Jointly Administered) |

## ORDER ALLOWING, IN PART, THE CLAIMS OF TRUCK INSURANCE EXCHANGE (CLAIMS NOS. 42 AND 43)

This matter comes before the Court on the Debtors' Omnibus Objection to the Claims of Truck Insurance Exchange (Claims Nos. 42 and 43) [Dkt 1953] (the "Objection"), filed by the above-captioned debtors (together, the "Debtors").[2]

The Court having reviewed the Objection, Truck Insurance Exchange's Objection to Debtors' Omnibus Objection to the Claims of Truck Insurance Exchange (Claims Nos. 42 and

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Kaiser Gypsum Company, Inc. (0188) and Hanson Permanente Cement, Inc. (7313).  The Debtors' address is 300 E. John Carpenter Freeway, Irving, Texas 75062.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Objection.

43) [Dkt 2008] ("Truck's Objection"), Truck Insurance Exchange's Supplement to Its Objection to Debtors' Omnibus Objection to the Claims of Truck Insurance Exchange (Claims Nos. 42 and 43) [Dkt 2019] ("Truck's Supplemental Objection"), Debtors' Reply in Support of Omnibus Objection to the Claims of Truck Insurance Exchange (Claims Nos. 42 and 43) [Dkt 2292], Truck Insurance Exchange's Response to Reply of Debtors to Omnibus Objections to Truck Insurance Exchange Claim Nos. 42 and 43 [Dkt 2328] ("Truck's Response"); and the Court having heard the statements of counsel regarding the relief requested at a July 16, 2020, hearing before the Court (the "Hearing");

The Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (c) notice of the Objection and the Hearing was sufficient under the circumstances and in compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules;

The Court having determined that the legal and factual bases set forth in the Objection and at the Hearing establish just cause for the relief granted herein, including each of the following findings:

1. Truck filed Proof of Claims Nos. 42 and 43 (the "Claims") against Debtors for unpaid deductibles arising from Truck's pre-petition settlements of Asbestos Personal Injury Claims. In response to the Claims, which assert that amounts owed to Truck for deductibles total $3,365,500.00, Debtors asserted a right of setoff for each the following:

    b.    $2,187,398.17 owed to Debtors under the parties' Cost Sharing Agreement;

    c.    $411,947.00 owed for appeal bond premiums incurred by Debtors;

    d.    $297,500.00 for deductible overbilling by Truck on settlements it did not pay; and

    e.    $3,514.00 owed for costs incurred by Debtors for corporate designee witnesses.

Truck Objection, ¶ 3.

2.	The parties have reached agreement on all issues relating to the Claims and Debtors' offsets except for the $411,947.00 of appeal bond premiums that Debtors incurred during Truck's defense of underlying Asbestos Personal Injury Claims.

3.	The parties agree that the 1974 policy, as applied to Truck's obligations to defend and indemnity Debtors for Asbestos Personal Injury Claims, is interpreted and applied pursuant to California law.

4.	Under California law, "interpretation of an insurance policy is a question of law." Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 18 (1995).  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992).  Thus, "the mutual intention of the parties at the time the contract is formed governs interpretation."  AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 821 (1990); Cal. Civ. Code § 1636.  If possible, the Court infers the parties' intent solely from the written provisions of the insurance policy.  Id. at 822.  Finally, each provision must be interpreted "in context," giving effect to "every part" of the policy, with "each clause helping to interpret the other."  Palmer v. Truck Ins. Exchange, 21 Cal. 4th 1109, 1115 (1999) (citing Cal. Civ. Code § 1641).

5.	Truck Insurance Exchange ("Truck") Comprehensive Liability Policy No. 3504000, incepting Jan. 1, 1974 ("1974 Policy"), which the parties agree is "triggered" by the vast majority of Asbestos Personal Injury Claims against the Debtors, has been selected by the Debtors to respond to such claims.

6.	Within Insuring Agreement No. II of the 1974 Policy, entitled "DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS," the policy expressly provides that Truck

"shall . . . pay . . . all premiums on appeal bonds required in any defended suit." 1974 Policy, ¶ II.2(a) at TRK0000575.

7.      Where Truck intended to limit its obligation to pay for a bond, the 1974 Policy language shows that it did so expressly. Immediately before the appeal bond provision in Paragraph II.2(a) is a provision governing Truck's obligation to pay for a different kind of bond, requiring Truck to "pay all premiums on bonds to release attachments," expressly limited to "an amount not in excess of the applicable limit of liability in this policy." 1974 Policy at TRK0000575. Likewise, immediately after the appeal bond provision in Paragraph II.2(a) is a provision limiting Truck's obligation to pay "the cost of bail bonds required of the insured in the event of automobile accident or automobile traffic violation during the policy period," which expressly is "not to exceed $250 per bail bond." Id.

8.      Insuring Agreement No. II, containing Truck's promises to pay for these three types of bonds, expressly provides that "amounts so incurred, except settlements of claims and suits, are payable by the company [Truck] in addition to the applicable limit of liability of this policy." 1974 Policy at TRK0000576.

9.      In light of these express policy provisions, viewed in context and giving effect to every part of the 1974 policy, with each part helping to interpret the other, Truck's argument that "it is implied in the policy" that the most it would bond on appeal is its $500,000 indemnity limit is unsupportable. Truck's Objection, ¶ 8 ("While Truck's policy states that it will pay 'all premiums on appeal bonds,' it is implied in the policy that because the most Truck would ever pay is its 'applicable limit of liability' of $500,000, the most it will bond is its policy limit."). As is Truck's appeal to "equity and logic" in arguing for its policy interpretation. Truck's Response at 1, 2, 5. If the Court were to interpret Truck's express obligation to pay <u>all</u> premiums on appeal

-4-

bonds as limited or capped to an amount relating to its $500,000 limit, such an interpretation would violate a cardinal rule of policy interpretation under California law, as courts do not rewrite contracts.  See Kwok v. Transnation Title Ins. Co., 170 Cal. App. 4th 1562, 1571 (2009) (courts "do not rewrite any provision of any contract, [including an insurance policy], for any purpose").

        10.     Truck relies upon a number of non-California cases that Truck contends address its 1974 policy appeal bond language—*i.e.*, that Truck "shall . . . pay . . . all premiums on appeal bonds required in any defended suit"—or what Truck contends is "similar language" and thus supports its argument that "logically, an insurer's responsibility for a bond extends only to the limits of the policy."  Truck Objection, ¶ 9; see also id., ¶ 6; Truck's Response at 4, 5.  However, none of these cases addresses the question before this Court—how much of an appeal bond premium Truck is required to pay—and none includes even similar policy language.  For instance:

        a.     Bowen v. Gov't Employees Ins. Co., 451 So. 2d 1196, 1198 (La. Ct. App. 5th Cir. 1984), does not identify any policy language relevant to the insurer's obligation to pay for appeal bond premiums;

        b.     Charter Oak Ins. Co. v. Maglio Fresh Food, 45 F. Supp. 3d 461, 476 (E.D. Penn. 2014), identifies policy language referring to the insurer's obligation to pay for the cost of bonds, but expressly "only within the amount of insurance available"; and

        c.     Several cases, including Graf v. Hosp. Mut. Ins. Co., 956 F. Supp. 2d 337, 343 (D. Mass. 2013); James River Ins. Co. v. Interlachen Prop. Owners, 2016 WL 3093383 (D. Minn. June 1, 2016); and Fletcher v. Ratcliffe, No. CIV. A. 89C06160SCD, 1995 WL 790992, at *3 (Del. Super. Ct. Dec. 7, 1995), focus on whether the insurer was required under its

policy to post a bond or simply pay for the cost of the bond, and not any policy language that referred to, or limited, the amount of those bond costs the insurer was obligated to pay.

11. Debtors paid appeal bond premiums totaling $411,947.00 in three cases where a judgment was entered and appealed, namely Casey ($155,310.00), Desin ($5,732.00) and Silvestro ($250,905.00) (the "Appealed Cases").

12. Truck defended each of the Appealed Cases in the trial court, approved the appeal in each of the Appealed Cases and paid for appellate counsel fees in each of the Appealed Cases.

13. Truck also asserts that Debtors' setoff claim arising from Appealed Case Silvestro, the appeal bond premiums for which total $250,905.00, are barred by California's four-year statute of limitations for breach of contract.  Truck Suppl. Objection, ¶¶ 7, 9-15.

14. The Debtors' claim for appeal bond premiums is timely under both the Bankruptcy Code and California law, which preserve a debtor's right to assert setoff as a defense to a timely-filed claim.  Section 558 of the Bankruptcy Code expressly preserves all defenses a debtor has under state law.  See 11 U.S.C. § 558.  Defenses preserved under Section 558 include a debtor's right to effectuate a setoff, or "netting," of mutual debts.  See In re Circuit City Stores, Inc., 2009 WL 4755253, at *3 (Bankr. E.D. Va. Dec. 3, 2009).

15. In deciding the issue of timeliness, bankruptcy courts look to substantive state law.  See Copley v. United States, 959 F.3d 118, 125 (4th Cir. 2020) ("[A] court's discretion to disallow a setoff generally is confined to those circumstances when the validity of the right of setoff can be questioned under other law outside the bankruptcy code."); In re RCS Capital Dev., LLC, 2013 WL 3618550, at *9 (B.A.P. 9th Cir. July 16, 2013) (under section 558, setoff rights are determined under non-bankruptcy law).

16. Under California law, if Truck's claims for deductible payments and Debtors' claims for <u>Silvestro</u> appeal bond premiums both existed at a time when neither demand was barred by the statute of limitations, Debtors' monetary cross-demand is timely. Specifically, Section 431.70 of the California Code of Civil Procedure codifies setoff as an affirmative defense and expressly makes setoff claims timely, providing in relevant part, as follows: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations." <u>See</u> Cal Civ. Proc. Code § 431.70.

17. As the California Supreme Court has explained, "[o]ne important function of the section 431.70 setoff procedure is to provide partial relief from the statute of limitations. When two parties have opposing claims against one another, <u>whether or not the two claims are related</u>, one party might allow the statute of limitations to run on its claim, reasoning that the two claims have canceled one another out. If the second party then pursues its claim in a court action, the first party should be permitted to assert its expired claim defensively, arguing in effect that its earlier decision not to pursue the claim constituted a form of payment or compensation to the second party. But because the statute of limitations otherwise bars the first party's claim, the use of that claim should be defensive only, and the first party's recovery should be limited to offsetting any amount the second party might obtain on its opposing claim. The legislative history of section 431.70 suggests the Legislature intended the section to codify this principle."

Construction Protective Services, Inc. v. TIG Specialty Ins. Co., 29 Cal. 4th 189, 195 (2002) (emphasis added).

18. Moreover, under California law, the statute of limitations on any breach of insurance contract claim that an insurer has failed to fully defend is tolled until the conclusion of the underlying case—*i.e.*, when the time for appeal has expired or, where an appeal is timely filed, when the appellate court issues remittitur. Lambert v. Commonwealth Land Title Ins. Co., 53 Cal. 3d 1072 (1991) (although a breach of the duty to defend may give rise to an immediate action, the insurer's defense obligation continues so long as the third-party action is pending; the insured has the option of waiting until the time for the insurer's performance has passed and the underlying action is concluded); Oil Base, Inc. v. Cont'l Cas. Co., 271 Cal. App. 2d 378, 389-90 (1969) (because the insurer could have assumed its duty to defend at any time, the insured had the option to sue immediately for failure to defend or to wait until the expiration of the time for performance had ended before commencing action); see also Archdale v. Am. Int'l Specialty Lines Ins. Co., 154 Cal. App. 4th 449, 477 (2007) ("the duty to defend under a liability policy arises on tender of the defense and continues until the underlying lawsuit is concluded").

19. Tolling continues to case conclusion, in part, to determine the extent of any loss. Id. at 479 (tolling the statute of limitations on a bad faith claim for failure to reasonably settle within policy limits until the underlying third-party action was concluded). Like a breach of the duty to defend, a claim for payment of appeal bond premiums is tolled until the conclusion of a case. California Rules of Court, rule 8.278(d)(1)(F), provides that the party prevailing in the Court of Appeal may recover the "cost to procure a surety bond, including the premium . . . unless the trial court determines the bond was unnecessary." Here, until the Appealed Cases

-8-

were concluded, it was unknown whether Debtors would have any unreimbursed appeal bond premiums to seek from Truck.

20. The earliest date for resolution of an underlying claim in connection with which Truck seeks deductible payment from the Debtors is December 10, 2013.

21. Applying California's tolling rule, <u>Silvestro</u> concluded at the earliest when the time to appeal the judgment entered October 6, 2010 expired. Thus, Debtors' claim against Truck for <u>Silvestro</u> appeal bond premiums would have been timely under California law through at least early October 2014.

22. As a result, the statutory requirement of Section 431.70—that the Truck deductible claim (which accrued as early as December 10, 2013) and the <u>Silvestro</u> appeal bond premium claim (which was timely until at least October 2014)—"existed . . . at any point in time when neither demand was barred by the statute of limitations" is met and Debtors' setoff claim for the <u>Silvestro</u> appeal bond premiums is timely.

The Court having found that Truck is obligated to pay the entire amount of appeal bond premiums of $411,497.00 incurred in the Appealed Cases, in addition to and without being limited in any way because of Truck's $500,000.00 indemnity limit; and

The Court having found that Debtors' setoff claim under the 1974 policy for $250,905.00 in appeal bond premiums incurred in the <u>Silvestro</u> case is timely because it is asserted as a setoff to Truck's deductible claims under the 1974 policy pursuant to Section 431.70 of the California Code of Civil Procedure and was tolled until the <u>Silvestro</u> case was concluded;

**IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Objection is GRANTED.

2. The portion of the Claims with respect to Prepetition Deductibles is allowed in the amount of $465,140.83, calculated as follows:

| | |
|---|---:|
| Deductible billing to Debtors from Truck | $3,365,500.00 |
| Less deductible overbilling for settlements Truck did not pay | ($297,500.00) |
| Less amounts due Debtors per the Cost Sharing Agreement w/Truck | ($2,187,398.17) |
| Less cost of appeal bonds owed by Truck to the Debtors | ($411,947.00) |
| Less amounts spent by or on behalf of Debtors' PMK witnesses | ($3,514.00) |
| TOTAL | $465,140.83 |

3. The portion of the Claims with respect to Future Deductibles is disallowed, subject to Truck's right to resubmit such Claims for Future Deductibles in the event that the Lift Stay Order is not in place and the Plan is not confirmed.  Any such resubmitted Claims for Future Deductibles shall be amended to quantify and substantiate (with supporting data) any amount being requested.

4. The Debtors' objection to the Claims addressed in the Objection constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014.  This Order shall be deemed a separate Order with respect to the Claims.

5. The Debtors, the Debtors' claims and noticing agent, Prime Clerk LLC, and the Clerk of this Court are authorized to take any and all actions that are necessary or appropriate to give effect to this Order.

6. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation or enforcement of this Order.

This Order has been signed electronically.                    United States Bankruptcy Court

The Judge's signature and Court's seal
appear at the top of the Order.